EDNA I. BRIDGES, Plaintiff and Respondent, ERNEST E. JOHNSON, Plaintiff and Respondent, v. EARL MORITZ, D/B/A Central Construction Company, KENNETH L. BREWER, Defendants and Appellants, and THE MONTANA POWER COMPANY et al., Defendant and Appellant.

No. 11073.
Submitted February 6, 1967.   Decided March 21, 1967.
Rehearing denied April 6, 1967.
425 P.2d 721.

Weir, Gough & Booth and Ward A. Shanahan, Keller, Magnuson & Reynolds, Helena, Ward A. Shanahan and Edwin S. Booth (argued), Helena, Paul T. Keller (argued), Helena, for appellants.

Loble, Picotte & Fredricks, Helena, Gene A. Picotte (argued), Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an action for damages by Bridges, the owner of a building destroyed by a gas explosion, and Johnson, the owner of a business occupying the building, against the Montana Power Company, Earl Moritz, d/b/a Central Construction Company, and Kenneth L. Brewer. A gas service line was struck during construction work on a Special Improvement District in the City of Helena, and an explosion ensued burning the building and destroying the business therein. The district court entered a directed verdict against all three defendants on the question of liability and judgment was entered accordingly pursuant to damages set by the jury. The three defendants appealed, with Moritz and Brewer joining in one brief and Montana Power Company filing a separate brief.

The only question presented is whether the district court erred in granting a directed verdict against all defendants.

In 1963 the City of Helena created a Special Improvement District and engineers for the City, Morrison and Maierle, did the surveys, made maps and plans, and set grade stakes to guide construction workers. Earl Moritz, d/b/a Central Construction Company (and hereafter referred to as Moritz) was successful bidders and commenced work in July of 1963. Moritz employed the defendant Brewer, a heavy equipment operator who owned his own bulldozer, to do certain excavation work.

Throughout the course of the construction work, the Mon-

tana Power Company had employees on the scene to point out the location of gas mains located under the street surface and otherwise to assure the safety of Power Company facilities. Prior to the date of the accident, one Green, who was an employee of Moritz, discovered that the gas main on 15th Avenue was too close to the surface to meet the specifications set forth by the city engineers. The Power Company was so notified and lowered these gas lines to the required depth.

On August 9, 1963, Brewer started grading on 15th Avenue with his bulldozer at the direction of Moritz's superintendent. At about 10:00 o'clock a. m., a rock got between the blade of the bulldozer and the gas service line into Ernie's Body Shop and exposed the pipe. Montana Power Company men were on the scene and at that time pointed out to Brewer the location of the service line. They also tested the line and determined that the impact had not caused any leakage. After the pipe had been struck and tested the Power Company employees dug a hole closer to Ernie's Body Shop along the service line to determine the depth at that point.

Brewer continued to grade on 15th Avenue but mounded dirt over the exposed service line to permit the bulldozer to pass over the line without damaging it. General conversation took place between the Montana Power Company employees and Brewer and there is some conflict in the testimony as to what was said. It does appear to be fairly certain that Brewer was instructed not to grade in the area where the service line passed under the curb. He was also informed that the Power Company men would take a lunch break between 12:00 o'clock noon and 1:00 o'clock p. m. and that Brewer should not grade near the pipe until the Power Company personnel returned at 1:00 o'clock with a city engineer. The Montana Power Company also knew that Brewer was in the habit of taking one half hour for lunch from 12:00 to 12:30 o'clock p. m.

Brewer did commence grading at 12:30 o'clock p. m. at a time when there was no supervision by the Power Company.

Shortly before 1:00 o'clock, Brewer struck the gas service line and bent it about 18 inches out of line. He made an attempt to enter Ernie's Body Shop to check for leakage but was unsuccessful. Finding a radio-equipped truck of the Power Company, Brewer summoned Maras, one of the Power Company employees who had been supervising. Maras and others immediately cut the gas main but at this time an explosion occurred inside the Body Shop which destroyed the building and its contents. Fortunately there were no personal injuries.

In this appeal, all defendants disclaim responsibility for any negligence, or at least deny primary liability.

Section 93-5205, R.C.M.1947, provides: "Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto." The circumstances in which a directed verdict is proper have been clearly delineated in the case law of this state. Since any genuine question of fact should be submitted to the jury, a directed verdict may be entered only when it flows from the evidence as a matter of law. Holland v. Konda, 142 Mont. 536, 385 P.2d 272, 6 A.L.R.3d 824. The test employed to determine the legal sufficiency of the evidence used to support a motion for a directed verdict is whether reasonable men can draw different conclusions from the evidence. If but one conclusion is reasonably possible, then the directed verdict is proper. Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4.

There is little dispute as to the actual cause of the explosion. Nor can we entertain any serious discussion on the question of whether the defendant Brewer had sufficient notice of the location of the gas service line and the dangers involved in grading without supervision in the vicinity of the gas line. Uncontradicted testimony reveals that Brewer struck the line the morning of the accident. At that time the line was exposed and its proximity to the surface of the ground clearly revealed to Brewer. Of course Brewer was the only witness to the events

which precipitated the explosion, and there is some disagreement as to how far from the curb the impact occurred. Yet none of these factual variables detract from the negligent character of the act which caused the damage. We have no trouble in sustaining the decision of the district court with respect to the liability of the defendant Brewer.

A more difficult and critical question concerns the scope of the duties of Moritz and the Montana Power Company as they relate to the negligent act. Brewer was clearly an agent of Moritz. Although Brewer owned his own equipment and was not permanently employed by any one principal, he was hired on an hourly basis by Moritz for this particular job. Moritz, acting through his supervisors, directed the activities of Brewer and under well-established rules of agency, which we must here recognize, must answer for the torts of the agent committed within the scope of the agency. With respect to Moritz and Brewer the trial judge had little choice but to direct a verdict against them on the question of liability, and we must affirm that holding.

The position of the Montana Power Company differs from that of the other defendants in many important particulars. These factors, which we shall discuss, all relate to the scope of the duty owed by the Power Company to the plaintiffs in this action.

As a general rule, a gas company is not an insurer of every injury caused by exploding gas. In Staff v. Montana Petroleum Co., 88 Mont. 145, 156, 291 P. 1042, 1046, this court said that employees of a gas company must "use a degree of care commensurate with the danger involved." While the "danger involved" in the transmission and handling of natural gas is clearly of substantial magnitude, it is not so absolute as to render an absolute standard of care. We feel that the duty owed by the Power Company should be coextensive with the risks involved in this case and that their liability should be limited by reasonable discharge of that duty.

██ The Montana Power Company had the obligation to take reasonable means to protect existing gas transmission facilities during the repaving of the streets. Some degree of supervision of the activities of the construction company would clearly be necessary in discharging this responsibility. Since the Power Company could not be liable under the rules of agency for the dereliction of Brewer, the only grounds upon which liability of the Power Company could be predicated would be upon failure to take precautions reasonably necessary to protect the gas lines. It is clear that *adequate* measures were not taken, else the explosion would not have occurred. Yet any legal inquiry must assess the *reasonableness* of the activity involved and not the effectiveness.

██ Having carefully reviewed the record, we cannot escape the conclusion that the Montana Power Company reasonably discharged its duty. We also feel that a directed verdict was entered against the Power Company upon a misapprehension of the scope of duty owed by that defendant. In De Vries v. City of Austin (1961), 261 Minn. 52, 110 N.W.2d 529, the Court affirmed the following proposition: "* * * it would be unreasonable to charge plaintiff [the gas company] with the duty of constantly watching the operations over which it had no control to ascertain, at its peril, when defendants [contractors] intended to proceed with such work as might damage its service lines." The same case goes on to point out that a contrary result would in reality render the gas company an insurer of any misfortune precipitated by the construction company. Brewer was instructed by employees of the Montana Power Company not to grade near the gas service line until 1:00 o'clock p. m. when the Power Company men returned from lunch. It is true that the Power Company knew that Brewer was in the habit of resuming work at 12:30 o'clock p. m. Should the Power Company reasonably anticipate that Brewer would not follow explicit instructions given him a short time before the accident? We think clearly not. Brewer of course

professed ignorance. of the true location of the gas service line, which we find slightly incredible since the location of the line was clearly pointed out to him the morning of the explosion.

The primary beneficiaries of this construction project were the City of Helena and Moritz. The Montana Power Company became involved in a passive and supervisory capacity to protect their easements. under the streets. We feel that the duty of the utility company under these circumstances must, as a matter of law, fall somewhat short of absolute liability for the negligent acts of others.

Under Rule 50(b), M.R.Civ.P., a party who moves for a directed verdict at the close of the evidence may preserve this motion and renew it after the verdict and judgment thereon has been entered, in effect seeking judgment notwithstanding the verdict. As Rule 50(b) points out, the motion deals with the legal sufficiency of the evidence. We believe that there was error in failure to grant the defendant Montana Power Company's motion for a directed verdict, since the record demonstrates unequivocally that the Power Company took every reasonable precaution to protect its facilities and customers.

The judgment is therefore affirmed as to defendants Earl Moritz, d/b/a Central Construction Company and Kenneth M. Brewer. The cause is remanded with instructions to dismiss the action with respect to the defendant Montana Power Company.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and JOHN CONWAY HARRISON concur.