No. 12204

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

RUBY COLLINS,

Plaintiff and Appellant,

-vs-

YOKICHI ITOH,

Defendant and Respondent.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson, Sinclair and Murphy, Billings,
Montana.
James P. Murphy argued and Arnold Berger appeared,
Billings, Montana.

For Respondent:

Berg, O'Connell, Angel and Andriolo, Bozeman, Montana.
Charles F. Angel argued, Bozeman, Montana.

---

Submitted: September 18, 1972

Decided: NOV 17 1972

Filed: NOV 17 1972

*Thomas J. Kearney*
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

This is an appeal by plaintiff in a medical malpractice action from a directed verdict for the defendant, entered in the district court of the sixth judicial district, county of Park, Honorable W. W. Lessley presiding. Trial, with a jury commenced in Livingston on November 15, 1971.

Plaintiff, Ruby Collins, had been suffering many years from a thyroid problem and taking medication for the condition. In 1964, her condition deteriorated to the point that Dr. Allen Goulding of Billings recommended surgery. Following the recommendation plaintiff consulted defendant, Dr. Yokichi Itoh in August 1964, in Livingston, in regard to a thyroidectomy. On September 11, 1964, defendant performed the thyroidectomy. On the second or third day after the operation, plaintiff exhibited signs of what was later determined to be hypoparathyroidism, characterized by cramping, numbness, and muscle spasms. Defendant believed this to be a transient condition, requiring treatment with calcium gluconate and calcium tablets.

Defendant did not receive a pathologist's report on the thyroidectomy until four or five days after the operation. At that time, Livingston Memorial Hospital did not have a "true resident" pathologist. The tissue had been taken to Bozeman for analysis. When the report was received, defendant became aware that he had removed a parathyroid gland during the thyroidectomy. Plaintiff maintained defendant informed her that he had done so by mistake; defendant denies such a statement. Defendant asserted that he merely told her he had removed a parathyroid. After plaintiff's discharge from the hospital, her condition did not improve. Defendant increased the plaintiff's calcium dosage. In February 1965, plaintiff contacted Dr. Goulding for his advice. Dr. Goulding conducted several tests and suggested to defendant that plaintiff be given more calcium and vitamin D. This treatment continued until September 1967, when plaintiff moved from Livingston to Billings. The last time defendant saw plaintiff, he told her she must continue taking the calcium pills the rest of her life. She claimed she did not know that this was a result of the operation. It is admitted by the defendant that at no time did he inform plaintiff that any risks were involved

in a thyroidectomy.

In June 1968, plaintiff consulted Dr. Sidney Hayes, Jr., of Billings,for treatment of her condition. Plaintiff told Dr. Hayes she was taking 35 calcium pills per day for her parathyroid condition. Plaintiff contends that it was not until this time that she became aware of what caused her condition, i.e., the removal of the parathyroid. Plaintiff said Dr. Hayes told her the problem was low calcium because of parathyroid removal. Plaintiff continued under Dr. Hayes' care until August 1968. Shortly thereafter, plaintiff filed her complaint in this action.

Plaintiff contends she has tried to return to work but painful cramps in her hands and legs, caused by low calcium levels in her blood, have prevented her from continuing in any position. Plaintiff claims she is incapable of performing even simple maid work. In the interim, between the date of filing the complaint and the date of trial, plaintiff has twice been hospitalized due to her parathyroid condition. Defendant contends that these incidents were caused by plaintiff's failure to faithfully take her calcium tablets, as defendant told her she must do, and which plaintiff admitted she did not always do, alleging that these quantities of calcium tablets cause illness.

Plaintiff maintained that defendant was negligent in the following particulars: (1) removal of parathyroid tissue during thyroidectomy; (2) failure to inform plaintiff of risks in such surgery; (3) after removal of parathyroid tissue, failure to inform plaintiff of the consequences of removal; (4) failure to consult experts and medical texts before or after post-operative treatment; (5) failure to prescribe proper post-operative treatment; and (6) failure to perform surgery where a pathologist's services were immediately available. Defendant denied all allegations and raised the statute of limitations as a defense.

We have made a careful analysis of the facts in a light most favorable to the plaintiff. However, in a correct application of the law to the facts, we can find no support for overturning the directed verdict for defendant. There can be little question that plaintiff was indeed injured.

Testimony clearly indicated she must continue to take medication for the rest of her life. But the mere fact she suffered an injury is not enough. "The law does not presuppose that for every injury there must be a recovery in damages." Loudon v. Scott, 58 Mont. 645, 653, 194 P. 488, 12 A.L.R. 1487 ; Negaard v. Estate of Feda, 152 Mont. 47, 52, 446 P.2d 436. For the plaintiff to recover there must be a breach of a legal duty owed to her by defendant, which proximately caused her injury. Loudon, supra; Negaard, supra.

We will consider plaintiff's allegations of negligence individually. The pretrial order lists the removal of the parathyroid as the first item of negligence, relied upon by plaintiff

Statistical evidence from medical journals presented at trial indicated that removal of parathyroid tissue occurs in one-half of one percent to three percent of the cases. The rare incidence of such occurrence alone does not indicate any negligence on the part of defendant. Salgo v. Leland Stanford Jr. University Bd. of Trustees, 154 Cal.App.2d 560, 317 P.2d 170, 177; Dees v. Pace, 118 Cal.App.2d 284, 257 P.2d 756. After recognizing those percentages, the following testimony was elicited from plaintiff's witness, Dr. Movius:

"Q. The fact that this [removal of parathyroid tissue]
occurs surgically in whatever the small percentage is,
that doesn't necessarily indicate, does it, there was
any lack of care on the surgeon's part in performing
that particular surgery, does it? A. No, I don't think
so. Especially if it's for cancer or re-operation.

"Q. Well, what I'm getting at, in any particular case,
without knowing all the details of the surgery, you
can't just say that because a parathyroid was removed
it was due to lack of care, can you? A. Oh, no."

And again, on redirect and recross examination.

"Q. Doctor, if we can assume that the statistics
of from one-half of one percent to three percent
of thyroidectomies include removal of parathyroid
tissue, and if we further assume that these statistics
include the cancerous, the re-operation and the
unskilled hands, is it reasonably medically probable
that in non-cancerous, non-re-operation situation,
in skilled hands, that the percentage would be far
less or nonexistent? A. The literature says in
skilled hands, for the first operation, the incidence

- 4 -

of hypoparathyroidism is rare.

" * * *

"Q. Doctor, the fact that the incidence is rare does not mean that--it does occur, though. A. Yes.

"Q. Yes, and that doesn't necessarily mean that when it does occur it's a lack of due care, does it? A. No, it could be an anomalous condition. Although the incidence--Well, I can only speak for myself. It's never happened to me in a thousand operations."

In his final analysis, Dr. Movius testified that even though the occurrence of the removal of parathyroid in a thyroidectomy is rare, it is no indication in itself that it is the result of negligence. There was no evidence upon which a jury could predicate a finding that the removal was due to negligence.

Plaintiff's second allegation of negligence was defendant's failure to inform plaintiff, in advance, of the risks of such surgery. It is, of course, the prevailing rule that where a patient is in such physical health as to be able to consult about his condition, his consent is a prerequisite to surgical operation. 70 C.J.S. Physicians and Surgeons § 48. Such consent is not a mere rubberstamp of the physician's recommendation. Each man is considered master of his own body and may request or prohibit even lifesaving surgery. The law will not allow a physician to substitute his own judgment, no matter how well founded, for that of his patient. Natanson v. Kline, 186 Kan. 393, 350 P.2d 1093.

This Court has considered the "informed consent" doctrine recently in two decisions: Negaard v. Estate of Feda, 152 Mont. 47, 446 P.2d 436, and Doerr v. Movius, 154 Mont. 346, 349-350, 463 P.2d 477. In both cases we recognized the same rule. In Doerr, the court stated:

"The general rule on informed consent was set forth by this Court in Negaard v. Estate of Feda, 152 Mont. 47, 446 P.2d 436, 25 St.Rep. 632. The duty to disclose to assure that an informed consent is obtained was recognized and described as a matter of medical judgment. This duty to disclose was limited to those disclosures which a reasonable practitioner would make under similar circumstances. If the doctor obtained an informed consent and proceeded as a competent medical man would in a similar situation, his course of action should not be questioned.

"'The gist of the "informed consent" theory of liability is that a physician is under a duty under some circumstances to warn his patient of known risks of proposed treatment so that the patient will be in a position to make an intelligent decision as to whether he will submit to such treatment.'" (Emphasis added.)

The question here then becomes whether a one-half of one percent to three percent incidence of hypoparathyroidism in a thyroidectomy is a "known risk", and whether a "reasonable" practitioner would have disclosed those statistics. We think not. Whether the physician is under a duty to disclose depends upon the facts of each case; no hard and fast rule can be stated as to what should be disclosed and what can be withheld. Di Filippo v. Preston, 53 Del. 539, 173 A.2d 333; Nishi v. Hartwell, 52 Hawaii 188, 473 P.2d 116; Watson v. Clutts, 262 N.C. 153, 136 S.E.2d 617. The statistical evidence presented, even when viewed in the light most favorable to plaintiff, does not demonstrate an urgent need to disclose such information to the patient. The evidence presented was not sufficient to present a question of fact for the jury.

Furthermore, testimony used to indicate the custom and practice of a reasonable practitioner was inconclusive. Dr. Hayes, witness for plaintiff, testified by deposition:

"Q. * * * do you generally in a routine always inform patients that you're going to do a thyroidectomy on of possible damage to the parathyroid function? A. If -- yes. That and a recurrent laryngeal nerve.

"Q. You do it in every case? A. In every case, yes.

"Q. Do you know what the other doctors in Billings do? A. I believe they do the same thing.

"Q. Well, do you know? You say you believe. But have you talked to them? A. Well, how would I know?

"Q. Well, that's the answer. That's all you have to say. A. I don't know what they do.

"Q. And, likewise, in Bozeman or Billings, do you know what the doctors down there do? A. I don't know what they do down there."

A similar situation arose in Schumacher v. Murray Hospital, 58 Mont. 447, 460, 193 P. 397. There, this Court said:

> " * * * Dr. Matthews merely says that he uses it in
> his own practice in all cases, but does not know the
> practice of others in that regard.  Such testimony
> does not prove negligence nor want of care or skill."

The custom and practice of one particular doctor, without knowledge of the general custom and practice among the profession, cannot establish a reasonable basis to infer that defendant departed from that practice.  Nor does it infer that a doctor who does not follow that particular practice was negligent.  See Di Filippo v. Preston, 53 Del. 539, 173 A.2d 333; McPhee v. Bay City Samaritan Hospital, 10 Mich.App. 567, 159 N.W.2d 880.

In view of the testimony of Dr. Movius and Dr. Hayes, we have had raised once again for our consideration the question of "standard of care and treatment".  The long standing rule in this jurisdiction was stated in Negaard to be:

> "A dentist [doctor] who undertakes to treat a
> patient assumes a duty to that patient to exer-
> cise such reasonable care and skill as is usually
> exercised by a dentist [doctor] in good standing
> in the community in which he resides.  Donathan
> v. McConnell, 121 Mont. 230, 193 P.2d 819."  See
> also Hansen v. Pock, 57 Mont. 51, 187 P. 282.

In oral argument counsel for both parties argued that as to "medical specialists" the "locality rule" be considered and abandoned.  However, the evidence introduced does not give rise to, nor is the issue raised by either party, except on oral argument, our consideration of the rule above set forth in Negaard.

Plaintiff's third contention of negligence was that after the removal of the parathyroid, defendant failed to inform the plaintiff of the consequences of removal.  In order to establish this contention as a breach of defendant's duty to the plaintiff, it must be shown that such was the standard of care owed to the plaintiff.  However, no testimony tending to show this to be the standard of care in the medical profession was presented.  Neither Dr. Hayes nor Dr. Movius indicated they would act in the manner plaintiff desires, under the same or similar circumstances.  The well-recognized rule, subject to certain exceptions, is that there must be expert testimony to establish negligence in a malpractice action.  Loudon, supra; Schumacher, supra; 81

- 7 -

A.L.R.2d 597. Plaintiff presented no expert testimony in support of this allegation. In Loudon, this Court said:

> "The gist of this action [malpractice] is negligence, and actionable negligence arises only from a breach of legal duty." See also: Jonosky v. Northern Pac. Ry. Co., 57 Mont. 63, 187 P. 1014.

Here, no breach of legal duty was demonstrated.

We find no merit in plaintiff's contention number four--failure by defendant to consult expert internists and medical texts before or after post-operative treatment. Some courts have held that it is the physician's duty to consult or refer his patient to a specialist, if he knows he does not possess the requisite degree of knowledge or skill for treating his patient. Manion v. Tweedy, 257 Minn. 59, 100 N.W.2d 124; Anno. 35 ALR.3d 349. Testimony indicated the defendant was a qualified medical practitioner and that he had performed many trouble-free thyroidectomies. Certainly no duty to call in another doctor arises when every indication is that the doctor is fully capable of performing the operation and treating his patient in the post-operative phase. Defendant, testifying as an adverse witness, indicated clearly that he had consulted medical books or journals concerning treatment of the plaintiff's condition. Additionally, he consulted Dr. Goulding on the recommendation of surgery itself and on the treatment for the condition existing after the operation. Although plaintiff's counsel attempted to impeach defendant with what was intended to be a prior inconsistent statement, the only inconsistency was one of degree. The evidence refutes this contention.

Plaintiff's fifth contention, alleging failure to prescribe proper post-operative treatment, was also not supported by the evidence. The only evidence of treatment different from the treatment administered by defendant was the treatment given by Dr. Hayes. However, Dr. Hayes began treating plaintiff in June 1968, almost ten months after defendant had last treated plaintiff. Plaintiff saw no physician in the ten month interim. There was no showing that Dr. Hayes' treatment was any more "proper" than the treatment

- 8 -

administered by defendant.  In Schumacher this Court said:

> "Nor does the fact that other physicians might have
> adopted other methods necessarily render the attend-
> ing physician liable, nor show negligence or want
> of skill or care.  If the method is one which has
> substantial medical support, it is sufficient."
> See also Dunn v. Beck, 80 Mont. 414, 260 P. 1047.

Dr. Goulding concurred in defendant's treatment of plaintiff, advising only to increase the calcium dosage and add vitamin D.  Plaintiff's witness, Dr. Movius, admitted that calcium plus vitamin D for treatment of plaintiff's condition was not improper.

Finally, plaintiff's last contention--negligence in failing to perform the surgery where the services of a pathologist were immediately available, has no merit.  To uphold such a contention would place an intolerable burden upon small hospitals and doctors living in smaller communities. The hint of the possibility, elicited from defendant, of replacing an inadvertently removed parathyroid into the sternocleidomastoid muscle is not enough to establish such experimental technique as a legal duty.

This Court, on a number of occasions, has stated that cases and issues should not be withdrawn from a jury unless reasonable and fair-minded men could reach only one conclusion from the facts.  Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57; Bridges v. Moritz, 149 Mont. 273, 425 P.2d 721; Holland v. Konda, 142 Mont. 536, 385 P.2d 272.  Genuine issues of fact should be submitted to the jury.  However, whether evidence on behalf of a plaintiff is sufficient to take a case to the jury is a question of law for the trial judge. Lovas v. General Motors Corp., (6 Cir.) 212 F.2d 805.  A bare scintilla of evidence is not sufficient to require submission to the jury.  Volume 2B, Barron and Holtzoff, § 1075, and Johnson v. Chicago, Milwaukee and St. Paul Ry. Co., 71 Mont. 390, 230 P. 52.

Since we have decided that the trial court acted correctly, we need not discuss the issues of res ipsa loquitur or the statute of limitations. The decision of the trial court directing a verdict for defendant at the close of the plaintiff's case was correct.

The judgment is affirmed.

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justices