No. 13404

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

ALAN LLERA,

                Plaintiff and Appellant,

-vs-

BYRON R. WISNER, D.D.S.; JON A.
JOURDONNAIS, D.D.S.; ROBERT R.
HYLTON, M.D.; J. McGARITY, C.R.N.A.;
M.D. ANESTHESIA SERVICES; M. KEMP,R.N.;
D. DRAKE, R.N.; and SAINT VINCENT'S HOSPITAL,

                Defendants and Respondents.

---

Appeal from:  District Court of the Thirteenth Judicial District,
               Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellant:

        Lewis E. Brueggemann argued, Billings, Montana

    For Respondents:

        Anderson, Symmes, Forbes, Peete and Brown, Billings,
         Montana
        Richard F. Cebull argued, Billings, Montana
        Weymouth Symmes argued, Billings, Montana
        Keefer and Roybal, Billings, Montana
        J. Dwaine Roybal argued, Billings, Montana
        Neil Keefer appeared, Billings, Montana
        Crowley, Haughey, Hanson, Gallagher and Toole,
         Billings, Montana
        Jack Ramirez argued, Billings, Montana

---

                Submitted:  October 19, 1976

                Decided: DEC 20 1976

Filed: DEC 20 1976

*Thomas J. Kearney*
                  Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from summary judgment entered in favor of all defendants in a dental malpractice action in the district court, Yellowstone County.

Plaintiff Alan Llera brought action alleging malpractice resulting from an oral surgical procedure known as a partial glossectomy. Plaintiff alleges the malpractice occurred in the diagnosis of his problem and in the resultant operation. He alleges no informed consent was obtained nor were the risks and the alternatives to his tongue problem ever explained or discussed.

Plaintiff alleges Dr. Joh A. Jourdonnais, the referring dentist, gave Dr. Byron Wisner no referral information at the time; that Dr. Hurly, the admitting doctor at St. Vincent's Hospital found nothing wrong with his tongue but did find enlarged tonsils; that Dr. Hylton, the anesthesiologist and his agents were negligent in allowing the operation; that two nurses, D. Drake and M. Kemp, did not provide the proper care; and finally that St. Vincent's hospital failed to exercise the proper degree of care for plaintiff.

Plaintiff, a 20 year old man, went to see Dr. Jourdonnais, a Great Falls orthodontist, for treatment to reduce the gaps between his teeth. Dr. Jourdonnais, after treating plaintiff through the use of orthodontic appliances suspected that the space problem might be caused by what is known in the profession as "tongue thrust" which is an involuntary forward-thrusting movement of the tongue upon swallowing which forces the upper

teeth apart. He discussed his conclusions with plaintiff and informed him of an operation that might help the problem. The doctor also informed plaintiff of a doctor in Billings, Montana who had special board certification as an oral surgeon, one Dr. Byron R. Wisner, who might perform the operation necessary to correct the tongue problem. Dr. Jourdonnais did not know Dr. Wisner personally, he had heard about him from another dentist. Plaintiff request an appointment with Dr. Wisner in Billings.

Dr. Jourdonnais denied ever recommending an operation to plaintiff, but stated in his deposition that after discussing his diagnosis with plaintiff he merely made the appointment for him with Dr. Wisner. He sent Dr. Wisner his X-rays and a plastic mold of plaintiff's teeth but did not send his written diagnosis. Neither did he tell Dr. Wisner of his diagnosis as "tongue thrust".

Plaintiff's appointment with Dr. Wisner was February 23, 1973, in Billings. Dr. Wisner's diagnosis was "congential macroglassia" which in common terms is an oversized tongue. Dr. Wisner recommended surgery known as a partial glossectomy, which he performed on June 5, 1973 at St. Vincent's Hospital in Billings. This operation consisted of removal of a wedged shaped piece of the tongue to reduce its size. Prior to the surgery and upon entrance into the hospital, plaintiff was examined by Dr. John Hurly, as required by the rules of the hospital for any patient who was to undergo surgery.

During surgery Dr. Wisner was assisted by a nurse, M. Kemp, who was trained and employed by Dr. Wisner for oral surgery. The anesthesiologist and the anesthetist, Dr. Robert R. Hylton and

J. McGarity, respectively, members of M.D. Anesthesia Services, assisted in the operation. One defendant, D. Drake was the circulating nurse and was an employee of St. Vincent's. Plaintiff remained in the hospital five days before returning home to Great Falls. Although a schedule was set up for plaintiff to see Dr. Wisner after leaving the hospital, he returned only once, on July 20, 1973. In his deposition, Dr. Wisner testified that on that call plaintiff had no complaints. He also testified he did tell plaintiff there was a chance of some loss of tongue mobility, speech impairment, loss of taste, and possibly it might not cure his tongue thrust when he was informed by plaintiff that Dr. Jourdonnais had discussed the operation with him and he wanted the operation. However, Dr. Wisner did say he told plaintiff that it was a difficult procedure that should be done in the hospital. Plaintiff said his reason for wanting the operation was because of the spacing and flaring of his teeth and the operation might help remove the pressure on those teeth. While denied by plaintiff and his mother, Dr. Wisner stated in his deposition that she was in favor of her son having the operation.

During the one return visit to Dr. Wisner, no infection was noted in the tongue. On examination plaintiff also showed no taste nor sensory deficiency; the tongue had normal mobility and plaintiff could lick his lips.

The hospital records and depositions indicate that plaintiff lost from 1100 to 1500 cc of blood and that two blood transfusions were required. Plaintiff alleges that expert testimony would indicate that 200 to 300 cc is a normal loss in this type of operation and the loss of such a large amount is an

evidentiary fact tending to prove the ultimate fact the operation was not performed properly.

Following the operation plaintiff returned to Great Falls and continued to have Dr. Jourdonnais do orthodontic work for him for some six months until plaintiff moved to Bozeman. Plaintiff stated in his deposition that when he went to see Dr. Wisner some six weeks after the operation his tongue was inflamed and that Dr. Wisner gave him some pills for the inflammation. Dr. Jourdonnais stated he had difficulty with plaintiff before and after the operation with plaintiff not keeping appointment dates, which interfered with his giving plaintiff constant care.

Some six months after the operation in Billings, plaintiff had his tonsils and adenoids removed in Great Falls by Dr. W. J. Roberts. In his deposition, Dr. Roberts stated that at the time of his removing the tonsils they were enlarged and infected and in his opinion this infection was chronic. However, he stated when he first examined plaintiff in October 1973, he found no acute infection. He further stated that while he doubted the tonsils would have interfered with the movement of plaintiff's tongue, the recurring inflammation could cause the tongue to be sore.

Five issues are presented all directed to the granting of summary judgment to defendants. These issues can be summarized thus -- Was summary judgment proper:

1) If there were genuine issues of fact as to any one or more of defendants?

2) Where plaintiff moved for a continuance to locate additional expert testimony?

3) Where there was expert testimony already before the court, or its equivalent?

4) As to any one or more, or all of defendants, as a matter of law as pertaining to any one or more of the three causes of action?

5) When defendants failed to comply with the notice requirements of Rule 56(c), M.R.Civ.P.?

We note here that plaintiff's complaint against the defendants sets forth three causes of action, the first for lack of informed consent, the second for failure to use due care, (both sounding in tort); and the third against only defendant Wisner for breach of express warranty to obtain a specific result. Extensive discovery procedures followed the filing of the complaint, including seven depositions, several sets of interrogatories, numerous exhibits, and including articles from dental publications that considered the treatment of an "open bite" and "tongue thrust" condition.

We have carefully reviewed the posture of the cause at the time all defendants filed motions for summary judgment and at the time such motions were heard. We affirm such summary judgments as to six defendants without further discussion other than to note we find the record concerning these six totally fails to disclose genuine issues of material fact on any theory of pleading advanced by plaintiff. These six defendants are: Robert R. Hylton, M.D.; J. McGarity, C.R.N.A.; M.D. Anesthesia Services; M. Kemp, R.N.; D. Drake, R.N.; and Saint Vincent's Hospital. See: Montana Deaconess Hospital v. Gratton, _____ Mont._____, 545 P.2d 670, 33 St.Rep. 128; Collins v. Itoh, 160 Mont.461, 503 P.2d 36; Maki v. Murray Hospital, 91 Mont. 251, 7 P.2d 228; Davis v. Trobough, 139 Mont. 322, 363 P.2d 727.

The summary judgments granted Dr. Jourdonnais and Dr. Wisner, will be discussed individually.

As to Dr. Jourdonnais, the summary judgment resulted after no facts were developed that revealed any deviation from the established standards of treatment by orthodontists and after it was shown that no harm came to plaintiff resulting from the treatment by Dr. Jourdonnais. It is of import to note that the court did not grant this defendant's motion for summary judgment until after plaintiff's attorney told the court he could not produce any additional expert witness testimony against Jourdonnais other than that before the court.

The record is bare of any testimony of another orthodontist, dentist, medical doctor, or other expert that the professional service rendered plaintiff by this defendant was in any manner improper or negligent. In truth, plaintiff has no complaint as to the orthodontic work, but directs his complaints as to Jourdonnais' diagnosis and his failure to warn plaintiff of the seriousness of the operation called a "partial glossectomy".

Before the district court was the deposition of Dr. Morgan Allison, Ohio State University, an internationally recognized oral surgeon. His testimony shows clearly that there was no error in diagnosis by Dr. Jourdonnais and his treatment of plaintiff is a recognized and acceptable method of treatment.

Here we have a referring doctor being faulted on the referral, because plaintiff is dissatisfied. We find no case law cited by plaintiff or by our research of the question, that holds a recommendation of a physician to another will subject the latter to liability for the recommendation, absent a showing of partnership or employment or agency. The recommended physician

is treated as an independent contractor, liable for his own torts. Graddy v. New York Medical College, 243 N.Y.S.2d 940; Oldis v. La Societe Francaise de Bienfaisance Mutuelle, 130 C.A.2d 461, 279 P.2d 184; Huber v. Protestant Deaconess Hospital Ass'n, 127 Ind.App. 565, 133 N.E.2d 864; Myers v. Holborn, 58 N.J.L. 193, 33 A. 389; 70 C.J.S. Physicians and Surgeons, §54(d), p. 978.

We do not find plaintiff's allegation that defendant Jourdonnais was negligent due to the lack of informed consent supported by any evidence. Again we can find no case where liability for failure to inform is found against one other than the physician who undertakes the operation. Here, defendant Jourdonnais did not advise plaintiff on the surgical procedure because he did not have knowledge of it other than reading. He stated he explained to plaintiff that he knew of the procedure having been performed; he knew nothing about it; he did not recommend it; but if plaintiff felt his situation was serious enough in his own mind, and he wanted further information on the procedure, then he would put him in touch with Dr. Wisner. He told plaintiff he would put/in touch with Dr. Wisner for information only. On this basis he contacted Dr. Wisner, made an appointment for plaintiff, and sent all his records to Dr. Wisner. The rule is that the physician who prepares to perform a medical or surgical procedure has the obligation to explain that procedure to the patient -- not the referral doctor. Watson v. Clutts, 262 N.C. 153, 136 S.E.2d 617; Mitchell v. Robinson, (Mo. 1960), 334 S.W.2d 11; Harwick v. Harris, (Fla. 1964), 166 S.2d 912.

- 8 -

The accepted view is that the sufficiency of the physician's disclosure is a matter to be measured against acceptable medical practice. Plaintiff is required to produce expert testimony to establish a standard of medical practice and show defendant's deviation from that standard. Zebarth v. Swedish Hospital Medical Center, 81 Wash.2d 12, 499 P.2d 1. The record presented to the district court in the instant case lacks any evidence of a standard for an orthodontist, or of one that refers patients to another specialist. The testimony of Dr. Schultz, an oral surgeon of Great Falls, does not supply the standard necessary to sustain plaintiff's position here.

We find summary judgment proper as to defendant Jourdonnais.

The general fact situation as it relates to Dr. Wisner has been heretofore set out. He is a board certified oral surgeon who before practicing in Billings, served a three year residency under Dr. Morgan Allison of Ohio State University. Dr. Allison in his deposition stated Dr. Wisner was fully qualified to perform the "partial glossectomy" and after reviewing all the depositions in this case, along with the records of the surgical procedure, he found no indication of any improper procedure on the part of Dr. Wisner in performing the operation.

With this background in mind, we review the background of this complaint. The operation was performed in June 1973. The complaint was filed March 5, 1975. Extensive discovery followed and the trial date of February 2, 1976 was continued to May 17, 1976 to complete such discovery. Motion for summary judgment was filed and served by defendant Wisner on May 7, 1976. After reviewing the depositions of Dr. Schultz and

- 9 -

and Dr. Jourdónnais, which showed that after examining plaintiff after his operation they found no residual damage or evidence to sustain the problems he complained of, the court granted the motion for summary judgment on May 17, 1976.

We note here that at the time of the hearing on summary judgment, the attorney for plaintiff did not object to notice on the hearing of less than the ten days allowed by statute, and admitted that "he had no qualified expert testimony other than the depositions which this Court has read", all of which appears in the trial court's judgment.

All parties to this action agree that four cases control the issues before us. Donathan v. McConnell, 121 Mont. 230, 193 P.2d 819; Negaard v. Feda, 152 Mont. 47, 446 P.2d 436; Montana Deaconess Hospital v. Gratton, ____Mont.____, 545 P.2d 670, 33 St.Rep. 128, 130, 132; Collins v. Itoh, 160 Mont. 461, 503 P.2d 36.

Donathan established that in Montana a dentist owes the same duty as a physician to his patient.

In Gratton this Court held summary judgment is proper:

"'* * * if the pleadings, depositions, answers
to interrogatories, and admissions on file show
that there is no genuine issue as to any material
fact and that the moving party is entitled to
judgment as a matter of law. * * *' Rule 56(c),
M.R.Civ.P."

Also Gratton held that where no genuine issue of fact has been raised that the opposing party has the burden of presenting evidence of material and substantial nature raising such issue, noting that when plaintiff fails to do so, summary judgment must issue. The question of the establishment of a standard of care against which the acts or omissions could be measured to establish negligence is quoted from Evans v. Bernhard, 23 Ariz.App. 413, 533 P.2d 721,723:

"'* * * First, evidence must be presented to estab-
lish the applicable standard of medical practice
in the particular type of case involved and second,
it must also be shown that the doctor negligently
departed from this recognized standard in his treat-
ment of the plaintiff. In order to make this threshold
breach of duty actionable,it must then be shown that
the breach of duty was the legal cause of the plaintiff's
injuries. * * * The medical standard of care must be
established by expert medical testimony unless the con-
duct complained of is readily ascertainable by a lay-
man. * * * However, third party expert testimony is
not always necessary as this standard can be established
by the defendant doctor's own testimony.'"

Plaintiff in relying upon Donathan acknowledges that

the rule established there controls this case. In a later case,

Negaard the duties owed by a dentist were fully set forth, and

those principles apply to the instant case.

At the time of the hearing on summary judgment, plaintiff

here was in the same position as were the Grattons, appellants

in Montana Deaconess Hospital in their appeal to this Court.

Plaintiff complains of numerous factual issues principally relating

to the diagnosis of his condition, the procedure used to correct

it, and the treatment given him. If all the questions were

resolved in his favor, he still could not prevail for he

had no qualified expert testimony five days before trial date to

show that defendant Wisner departed from the recognized standard

of care in his treatment of plaintiff. The doctors he alleged

as his experts were not "deposed" and several indicated no

intent to travel to Billings to testify on May 17, 1976.

Plaintiff stated he intended to call, as experts, Drs.

Baldwin and Roberts of Great Falls, however he previously

admitted that Dr. Baldwin would not testify at trial or by

deposition. So at the time of the summary judgment ruling, he

was down to one possible witness Dr. W. J. Roberts, a physician

- 11 -

whose testimony was to provide the standard of care for an oral surgeon. Dr. Roberts, a board certified ear, nose and throat specialist, under the standard set by this Court in Collins, could not qualify as an expert against Dr. Wisner as to the standard of care that is usually exercised by an oral surgeon. This is true too as to his testimony about the fact the tonsils created an infected area in the oral cavity that could have caused an infection to the tongue. This Court in Gratton noted:

> "The presence of an infection following an operation or open reduction of a fracture does not establish negligence. [Citing cases]."

According to his deposition, Dr. Roberts knew nothing about a partial glossectomy until after he examined plaintiff before removing his tonsils and the only knowledge he had was gained thereafter after discussing the procedure with oral surgeons in Great Falls.

Plaintiff claims "lack of informed consent". There was nothing before the trial court in way of deposition or other documents which set forth the standard of dental care required of dentists in informing their patients with respect to risks that might result from the performance of an operation such as performed on plaintiff. No showing was made with respect to disclosure required of a dental practitioner prior to the performance of a partial glossectomy. In so far as could be determined, this may have been the first such operation in this area. Plaintiff recognizes that under Negaard expert testimony is required to establish the "informed consent" doctrine, but argues he has carried that burden of proof in the depositions of Jourdonnais, Wisner, Schultz, Roberts and Allison. As previously

- 12 -

noted, these depositions do not present the necessary testimony from any qualified expert that establishes such standard.

We next consider the blood loss issue. We find no testimony showing the loss of blood during the operation could result in plaintiff's alleged residual complications. Dr. Morgan Allison, defendant's expert, testified in his deposition that this was unusual bleeding for the partial glossectomy but went on/to state that plaintiff did not suffer any complications from this loss because of the transfusions he received. We find no testimony of any of those deposed alleging plaintiff suffered any compensable damage or complication resulting from an abnormal loss of blood.

Next we consider plaintiff's allegations the operation was unnecessary and unwarranted. The record is devoid of any testimony supporting these allegations. Some doctors might have proceeded with a different treatment before resorting to the surgery, but none testified that it was unnecessary or unwarranted. The choice was one of medical or dental judgment.

Plaintiff argues this Court's holding in Baylor v. Jacobson, _____ Mont._____, 522 P.2d 55, 33 St.Rep. 662, is authority to allow him to go to the jury. He alleges there was expert testimony or its equivalent in the record indicating the operation should be performed only after "everything else fails" and that the operation should not have been performed at all in this case. We do not agree. In Baylor the majority found an offer of proof of the required standard of care and the defendant's breach thereof in the medical testimony of a Dr. Robert Tuby whose identity the plaintiff revealed in an amended answer, filed a day after the summary judgment.

- 13 -

Here, no expert medical testimony is available to establish any general issue of material fact concerning the required standard of care Dr. Wisner allegedly deviated from.

In plaintiff's complaint, as a third cause of action, he alleged he agreed to pay defendant Dr. Wisner $283.20, as consideration for his promise, warranty and performance of the operation. He alleges defendant breached this warranty, but plaintiff shows no reliance on same. The record indicates the amount plaintiff paid for the surgical procedure (the operation) but shows no warranty. While it is the law of Montana that if the contract was merely that defendant was to perform a surgical operation, then the law requires that the defendant possess the skill and learning possessed by the average member of his profession in the community and to use those skills and learning in a reasonable and prudent manner. He does not become a guarantor of the results of such operation.

We find summary judgment proper as to defendant Wisner.

Plaintiff raises for the first time on appeal the failure to give at least ten days notice of time fixed for hearing the motions on summary judgments as required by Rule 56(c), M.R. Civ.P. However, plaintiff fails to recognize that he must timely object to the rule requirement. Failure to do so waives the defect. 10 Wright & Miller, Federal Practice and Procedure: Civil § 2719, p. 451; 6 Moore's Federal Practice ¶56.14[1], p. 56-357. Also, plaintiff failed to raise his objection before the trial court. An objection raised for the first time on appeal is not timely and will not be considered by this Court.

Berdine v. Sanders County, 164 Mont. 206, 520 P.2d 650;

Carpenter v. Free, 138 Mont. 552, 357 P.2d 882.   See also:

Rule 61, M.R.Civ.P.

The orders of the district court granting summary

judgments are affirmed.

_____
Justice.

We Concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. Jack L. Green, District Judge,
sitting for Justice Wesley Castles.

- 15 -