Robinson v. Sisters of Charity
Decided Feb. 10, 1998
(NOT TO BE CITED AS AUTHORITY)

No. 97-294

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 25N

JACK L. ROBINSON,

Plaintiff and Appellant,

v.

OUR SISTERS OF CHARITY OF LEAVENWORTH,
K.S., d/b/a/ ST. VINCENT'S HOSPITAL AND
HEALTH CARE FACILITY OF
BILLINGS, MONTANA,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jack L. Robinson, Billings, Montana (pro se)

For Respondent:

Robert C. Brown, T. Lee Bruner, Poore, Roth & Robinson,

Butte, Montana

Submitted on Briefs: August 21, 1997

Decided: February 10, 1998

Justice Hunt delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     Jack L. Robinson ("Robinson") appeals from the decision of the Thirteenth Judicial District Court, Yellowstone County, dismissing his action against St. Vincent's Hospital ("Hospital") for failure to state a claim.  We affirm.

¶3     Two issues are presented on appeal:

¶4     1.    Does a hospital have a duty to obtain a patient's informed consent prior to surgery?

¶5     2.    Does a hospital have a duty to disclose the results of an internal study on infection rates to a patient prior to surgery?

FACTUAL AND PROCEDURAL BACKGROUND

¶6     Robinson underwent neck surgery at St. Vincent's Hospital in Billings, Montana.  Subsequently, he contracted a staph infection. As a result, Robinson instituted an action, pro se, against the Hospital.  His amended complaint alleges that the Hospital

intentionally withheld information "concerning a rash of infections during the three months prior to [Robinson's] operation. ..."  In Count I, he claims that the Hospital negligently failed to inform him of the risks of contracting a staph infection from the surgery. In Count II, Robinson alleges that the Hospital unlawfully withheld the results of an internal study the Hospital conducted regarding infectious disease rates in the Hospital.

¶7     The District Court dismissed both counts of the amended complaint, pursuant to Rule 12(b)(6), M.R.Civ.P., for the failure to state a claim for which relief may be granted.  The court held that the duty to provide informed consent rests with the treating doctor and not with the Hospital.  It also held that the results of the alleged internal study conducted by the Hospital are privileged and are inadmissible in judicial proceedings pursuant to Secs. 50-16-202, 203, and 205, MCA.  Additionally, the court held that Sec. 50-16-529, MCA, did not impose a duty upon the Hospital to disclose the results of that study.

### STANDARD OF REVIEW

¶8     Motions to dismiss are construed in a light most favorable to the non-moving party.  All allegations of fact contained in the complaint are taken as true, and the motion should not be granted unless it appears beyond a doubt that the non-moving party can prove no set of facts in support of its claim which would entitle it to relief.  Stenstrom v. State (1996), 280 Mont. 321, 325, 930 P.2d 650,652 (citing Hilands Golf Club v. Ashmore (Mont. 1996), 277 Mont. 324, 328, 922 P.2d 469, 471-72).  We review the lower court's conclusions of law to determine whether the court's interpretation of the law is correct.  Stenstrom, 930 P.2d at 653 (citing Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.)

### ISSUE ONE

¶9     Does a hospital have a duty to obtain a patient's

informed consent prior to surgery?

¶10    This Court set forth the general rule on informed consent in Negaard v. Feda (1968), 152 Mont. 47, 446 P.2d 436, overruled on other grounds by Burlingham v. Mintz (1995), 270 Mont. 277, 280, 891 P.2d 527, 529.   We stated that a "physician  is under a duty under some circumstances to warn his patient of the known risks of proposed treatment so that the patient will be in a position to make an intelligent decision as to whether he will submit to such treatment."  Negaard, 446 P.2d at 441.

¶11    Robinson alleges that the Hospital breached this duty when it failed to inform him of the risks of contracting staph infection following his surgery.  The Hospital, on the other hand, argues that it had no legal duty to advise Robinson of the risks associated with surgery.  It maintains that the duty to provide informed consent rests solely with the patient's surgeon and not with the Hospital.  We agree.

¶12    Although this is the first time that this Court has been presented with the precise question of whether a hospital has such a duty, in the past we have declined to extend the duty to those other than the surgeon who actually performs the medical procedure at issue.  In Llera v. Wisner (1976), 171 Mont. 254, 557 P.2d 805, the plaintiff alleged that an orthodontist who referred him to another doctor for possible surgery was negligent because he failed to obtain his informed consent or to advise him of risks associated with the surgery.  Llera, 557 P.2d at 810.   This Court rejected his claim, noting that we could "find no case where liability for failure to inform is found against one other than the physician who undertakes the operation."  Llera, 557 P.2d at 810.  In that case the referring doctor did not advise the plaintiff on the surgery, because he did not have knowledge of it other than through his reading.  He simply referred the plaintiff to another doctor who could give him further information.  Llera, 557 P.2d at 810.  We concluded by summarizing the rule on informed consent as follows:

The rule is that the physician who prepares to perform a

medical or surgical procedure has the obligation to

explain that procedure to the patient - not the referral

doctor.

¶13     In other contexts not involving the precise question of whether a hospital has a duty to obtain informed consent, this Court explained how that duty is to be carried out.  Our explanation indicates that the physician performing the procedure is the sole person obligated and equipped to advise the patient of potential risks.  We stated in Negaard:

The duty of the physician to disclose, however, is

limited to those disclosures which a reasonable medical

practitioner would make under the same or similar

circumstances.  How the physician may best discharge his

obligation to the patient in this difficult situation

involves primarily a question of medical judgment.  So

long as the disclosure is sufficient to assure an

informed consent, the physician's choice of plausible

courses should not be called into question if it appears,

all circumstances considered, that the physician was

motivated only by the patient's best therapeutic

interests and he proceeded as competent medical men would

have done in a similar situation.

Negaard, 446 P.2d at 441.  Similarly, in Collins v. Itoh (1972), 160 Mont. 461, 468, 503 P.2d 36, 40, we stated that the duty to inform is a "matter of medical judgment," and the duty is "limited to those disclosures which a reasonable practitioner would make under similar circumstances." (emphasis in original deleted).   See also Doerr v. Movius (1970), 154 Mont. 346, 349, 463 P.2d 477, 478-79 (stating the duty is a "matter of medical judgment" judged by the reasonable practitioner standard).

¶14    Limiting the duty to the physician and not the hospital is only logical, as the physician alone possesses the necessary knowledge to make the medical judgment.  It is the physician who has the medical education, training and experience.  It is the physician who has knowledge of the particular medical procedure, its risks, and the possibility for alternate procedures.  It is likewise the physician who knows the patient's medical history, temperament and intelligence.  The physician and not the hospital is in the best position to evaluate the potential risks of the surgery in light of the patient's medical history and is in the best position to explain the procedure in a manner the patient will understand.

¶15    Our decision today is not without precedent in other states. Other jurisdictions addressing this issue have similarly held that a hospital does not have the duty to obtain informed consent. See Kelly v. Methodist Hospital (Pa. Super. Ct. 1995), 664 A.2d 148, 151 (refusing to impose upon hospitals the duty to obtain informed consent and noting that "every jurisdiction which has considered the issue presented here has declined to impose upon hospitals the general duty to obtain informed consent."); Ritter v. Delaney (Tex. App. 1990), 790 S.W.2d 29, 31 (interpreting a statute and holding that "it is the duty of the treating physician, and not the hospital, to secure the informed consent of the patient."); Roberson v. Menorah Medical Center (Mo. Ct. App. 1979), 588 S.W.2d 134, 137 (holding the physician and not the hospital has the duty

to obtain informed consent).

¶16    Although we hold that a hospital does not generally have a duty to obtain informed consent, it is possible in unique factual circumstances that a hospital may have some duty in this area. However, accepting all allegations of Robinson's complaint as true, this is not one of those cases. Accordingly, we hold that the Hospital did not have a duty to obtain Robinson's informed consent prior to surgery, and the District Court did not err in dismissing Count I of the complaint.

ISSUE TWO

¶17    Does a hospital have a duty to disclose the results of an

internal study on infection rates to a patient prior to

surgery?

¶18    Robinson alleges that the Hospital negligently "cover[ed]-up" the results of its "own investigation into the rash of infections" in the Hospital. He alleges that in so doing, the Hospital breached "the fidelity and trust" that existed between the Hospital and him. The Hospital neither admits nor denies that such a study exists. Instead, it contends that even if the Hospital did conduct that study, it is nondiscoverable and privileged pursuant to Secs. 50-16-203 and 205, MCA.

¶19    Assuming, as we must in a motion brought pursuant to Rule 12(b)(6), M.R.Civ.P., that the Hospital did indeed conduct an internal study regarding a "rash of infections," the results of that study are privileged. By law, in-hospital medical staff committees have access to patients' records in part to obtain statistics and conduct studies relating to the prevention and treatment of diseases and illnesses within the Hospital. Section 50-16-202, MCA, provides:

Committees to have access to information.  It is in the interest of public health and patient medical care that in-hospital medical staff committees have access to the records, information, and other data relating to the condition and treatment of patients in such hospital to study and evaluate for the purpose of evaluating matters relating to the care and treatment of such patients for research purposes and for the purpose of reducing morbidity or mortality and obtaining statistics and information relating to the prevention and treatment of diseases, illnesses, and injuries.  To carry out such purposes, any hospital, its agents and employees may provide medical records, information, or other data relating to the condition and treatment of any patient in said hospital to any in-hospital medical staff committee.

¶20   The statute also confers an absolute privilege upon the proceedings, records, and reports of such in-hospital medical staff committees.  All such data is confidential and inadmissible in judicial proceedings.  The relevant statutory sections state:

50-16-203.  Committee information and proceedings confidential and privileged.  All such records, data, and

information shall be confidential and privileged to said

committee and the members thereof, as though such

hospital patients were the patients of the members of

such committee.  All proceedings and in-hospital records

and reports of such medical staff committees shall be

confidential and privileged.

50-16-205.          Data confidential - inadmissible in

judicial proceedings.          All data shall be confidential

and shall not be admissible in evidence in any judicial

proceeding, but this section shall not affect the

admissibility in evidence of records dealing with the

patient's hospital care and treatment.

Sections 50-16-203 and 205, MCA.  In Sistok v. Kalispell Regional Hosp. (1991), 251 Mont. 38, 823 P.2d 251, we interpreted these statutory provisions.  We held that "this statute unambiguously confers an absolute privilege on medical staff committees." Sistok, 823 P.2d at 253.  Accordingly, because the results of the internal study were protected by an absolute privilege, the Hospital had no duty to reveal them to Robinson prior to his surgery.

¶21     Notwithstanding this absolute privilege, Robinson argues that Sec. 50-16-529, MCA, imposed a duty upon the Hospital to disclose the results of the internal study.  We disagree.  First, that statutory section merely authorizes a health care provider to release certain information; it does not require the release.   See Sec. 50-16-529, MCA,: "A health care provider may disclose health care information. ..." (emphasis added).  Second, that statute

authorizes the release only in nine enumerated circumstances. Robinson does not fall within any of the nine classifications. Indeed, he does not even allege to fall within any of them. Hence, even if the Hospital chose to release certain information, Robinson is not a proper recipient. Third, the statute does not authorize the release of internal studies in any case. That statute defines when a hospital may disclose health care information about a patient without the patient's authorization to the extent the recipient needs to know. It does not authorize the disclosure of internal hospital studies or statistics. See Sec. 50-16-529, MCA.

¶22    Robinson also contends that the Hospital had a duty to disclose the results of the internal study pursuant to Sec. 50-5-106, MCA. That statutory section requires licensed health care facilities to submit annual reports to the Department of Health and Human Services. It also states that "[i]nformation and statistical reports from health care facilities which are considered necessary by the department for health planning and resource development activities must be made available to the public. ..." Section 50-5-106, MCA.  Because he is a member of the public, Robinson argues the Hospital should have disclosed the study to him.

¶23    We reject Robinson's contention. This is the first time that Robinson has argued that this particular statute required the Hospital to disclose the results of the internal study. This Court has consistently stated that "[w]e will not address an issue presented for the first time on appeal." Rasmussen v. Lee (1996), 276 Mont. 84, 88, 916 P.2d 98, 100 (citation omitted). "When a party argues for the application of a statute for the first time on appeal, the party raises a new set of questions that were not presented to the district court; and this Court will not find the district court to have erred on an issue that was `not presented to or ruled on by the lower court.'" Farm Credit Bank of Spokane v. Hill (1993), 266 Mont. 258, 263, 879 P.2d 1158, 1161 (citing Hanley v. Department of Revenue (1983), 207 Mont. 302, 307, 673 P.2d 1257, 1259).

¶24   Robinson could not prevail in any event.  Our review of the regulations implementing Sec. 50-5-106, MCA, indicate that this statute requires the Hospital to report information such as organizational data, financial data and the type of services provided.  See, generally, ARM 16.32.119, 138-142.  We located no requirement, either in the statute or the regulations, that  the Hospital disclose the results of the internal study to the Department of Health and Human Services.  Robinson does not even allege in his amended complaint that the results of the internal study was information that the Hospital was either required to report or actually reported pursuant to Sec. 50-5-106, MCA.

¶25   Accordingly, based upon all the foregoing,  we conclude that the Hospital had no duty to disclose the results of the internal study to Robinson prior to surgery.  We hold that the District Court did not err in dismissing Count II of the amended complaint.

/S/  WILLIAM E. HUNT, SR.

We Concur:
/S/  J. A.  TURNAGE
/S/  JIM REGNIER
/S/  KARLA M. GRAY

Justice W. William Leaphart, dissenting in part and specially concurring in part.
P26   I dissent as to issue one and specially concur as to issue two.  The Court adopts the proposition that the duty to provide informed consent rests solely with the patient's surgeon and not with the hospital.  I disagree with such a broad proposition.
P27   The Court reasons that:

Limiting the duty to the physician and not the

hospital is only logical, as the physician alone

possesses the necessary knowledge to make the medical

judgment.  It is the physician who has the medical

education, training and experience.  It is the physician who has knowledge of the particular medical procedure, its risks, and the possibility for alternate procedures.  It is likewise the physician who knows the patient's medical history, temperament and intelligence.  The physician and not the hospital is in the best position to evaluate the potential risks of the surgery in light of the patient's medical history and is in the best position to explain the procedure in a manner the patient will understand.

P28    It may well be true that the physician is uniquely positioned to know the patient and the procedure and the risks inherent in the procedure.  However, that does not address the question posed by Robinson's allegations.  The risk alleged by Robinson is not a risk which is normally inherent in the procedure or surgery, but rather is a risk arising out of the allegedly nonsterile conditions of the hospital in which the surgery was performed.  Assume, for example, that the physician had not performed surgery in that hospital in the last week and was unaware that the hospital had experienced an alarming number of staph infections in the last 4 days.  Despite his or her knowledge of the surgical procedure and of the patient, the physician would not be in a position to know of the infectious conditions nor to advise his or her patient of the risks arising out of those conditions.  That knowledge is in the hands of the hospital administrators, and the hospital should be held responsible for advising unsuspecting patients and their physicians that the risk of infection is more than that normally associated with the procedure when performed in a reasonably sterile environment.  When, due to conditions in a hospital, the risk of infection exceeds that which the physician has come to expect from

the procedure, the burden of advising the patient of the increased risk should fall on the hospital, not the physician.

P29     Citing decisions from three other jurisdictions, the Court generalizes that courts are in agreement that hospitals do not have the duty to obtain informed consent.  However, a review of these decisions illustrates my point.  In Roberson v. Menorah Medical Center (Mo. App. 1979), 588 S.W.2d 134, the court held that the physician must "have a knowledge of the surgery itself--its risks, whether imminent or remote, and whether it is pressing, deferrable or optional.  ...  The physician alone [as opposed to the hospital] is equipped to make the delicate judgments called for."  Roberson, 588 S.W.2d at 137.  In Kelly v. Methodist Hosp. (Pa. Super. 1995), 664 A.2d 148, the patient alleged that the hospital was negligent in failing to monitor the physician in the obtaining of informed consent, in failing to set forth the substance of what must be disclosed by a physician in obtaining informed consent and in failing to implement guidelines as to the requirement that the patient be informed of "all of the risks" of a surgical procedure.  Ritter v. Delaney (Tex. App. 1990), 790 S.W.2d 29, involves an allegation that the hospital took on a nondelegable duty from the physician by soliciting the patient's consent to a carotid endarterectomy.  Each of these decisions stands for the proposition that the physician, not the hospital, has an obligation to obtain informed consent as to the risks involved in the surgery in question.  None of the cited decisions addresses the question of whether a hospital has a separate and independent obligation to advise a patient of conditions existing in the hospital that increase those risks which a physician normally associates with the surgery and of which the physician is expected to advise the patient.

P30     Furthermore, although the record in this case is silent in this regard, I suspect that Robinson signed a hospital consent form in order to be admitted to the hospital.  If, as a condition of admission, the hospital requires the patient to sign a consent form, that is all the more reason to require that the patient's consent to hospitalization be an "informed consent" warning the patient of risks inherent, not in the procedure, but in having the procedure performed in that hospital at that time.

P31     Even assuming, as the majority holds, the physician has a duty to inform the patient of conditions at the hospital, including

abnormal conditions, I see no logic or policy in favor of holding that the duty falls solely or exclusively on the physician with the hospital being free of all liability. A plaintiff who alleges injury due to abnormal conditions at a hospital should, at the very least, be able to state a cause of action against either the hospital, the physician or both. He or she should not be restricted to suing the physician.

P32    As to whether the hospital is required or permitted to disclose the contents of its internal investigation of infections at the hospital, I agree that the results of such an investigation are, by statute, confidential. However, the confidentiality of such a report does not relieve the hospital of its duty to obtain informed consent. In other words, the hospital has a duty to advise a patient of conditions at the hospital regardless of whether there has been an investigation or a report concerning such conditions.

P33    I reject the proposition that a hospital has no duty to obtain informed consent when conditions at the hospital are such that the risks normally inherent in a hospital procedure are  increased. For that reason I would reverse the dismissal of Robinson's suit for failure to state a claim.

/S/  W. WILLIAM LEAPHART

Justice James C. Nelson and Justice Terry N. Trieweiler join in the foregoing.

/S/  JAMES C. NELSON

/S/  TERRY N. TRIEWEILER