No. 13212

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

ROBIN BAYLOR and SARAH J. BAYLOR,
Husband and Wife,

Plaintiffs and Appellants,

-vs-

DR. DAVID P. JACOBSON,

Defendant and Respondent.

Appeal from: District Court of the Fourth Judicial District,
Hon. E. Gardner Brownlee, Judge presiding.

Counsel of Record:

For Appellants:

Moore and Lympus, Kalispell, Montana
James D. Moore argued, Kalispell, Montana

For Respondent:

Garlington, Lohn and Robinson, Missoula, Montana
Larry E. Riley argued, Missoula, Montana

Submitted: May 27, 1976

Decided: JUL 12 1976

Filed: JUL 12 1976

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

The district court of Missoula County granted summary judgment to defendant doctor in a medical malpractice action. Plaintiffs appeal.

Plaintiffs are Robin Baylor and Sarah J. Baylor, husband and wife, of Missoula, Montana. On December 13, 1970, Sarah Baylor slipped on the driveway at her home while getting out of her car and fractured her leg. She was taken by ambulance to St. Patrick's Hospital where her injuries were diagnosed as a spiral fracture of the tibia and a comminuted fracture of the fibula of her right leg.

Defendant, Dr. David O. Jacobson, a medical specialist in orthopedic surgery, performed a closed reduction and placed the leg in a cast. Sarah Baylor was confined to the hospital for four days and was seen daily by Dr. Jacobson. Following her release from the hospital, she was seen by Dr. Jacobson at his office on five occasions: December 24, 1970, January 21, 1971, February 18, 1971, March 17, 1971, and May 21, 1971. Her cast was completely removed on March 17, 1971. When Dr. Jacobson last saw Sarah Baylor on May 21, he made the following notation in his records:

> "Still with pain about the tibia. No gross movement with manipulation but new x-rays show a remarkable paucity of callus formation considering the five months that have elapsed since her fracture. I would have anticipated further callus formation or some attempt at healing which has not occurred. Will reevaluate in one month and get new films and at that time perhaps manipulate under fluoroscope to determine any motion."

According to the deposition of Sarah Baylor, Dr. Jacobson told her at this time that her leg was completely healed; that further treatment was unnecessary; to quit babying herself and ignore the pain; that she might even jump up and down on

- 2 -

her leg; and did not advise her that the bone in her leg was slow in healing; that there was some question about nonunion; or anything along that line.

Sarah Baylor was scheduled to see Dr. Jacobson again in a month but she never returned. According to her deposition and that of her husband she did not return because she did not feel Dr. Jacobson could do anything further for her and that all he would do was send her to physical therapy. Instead she exercised the leg by walking back and forth across the floor at home with the help of her husband.

In any event, Sarah Baylor eventually consulted Dr. Clinton Craig, an orthopedic surgeon in Missoula, who took X-rays and told her that her leg had never healed and advised her to have surgery. A month or two later she consulted Dr. Paul Melvin, an orthopedic surgeon in Great Falls who X-rayed her leg, told her there was a nonunion and that she needed surgery. She next went to Dr. William J. McDonald, a Missoula orthopedic surgeon to get another opinion. He X-rayed her leg, told her she needed surgery, and referred her to Dr. Carlo Z. Biscaro, a Missoula orthopedic surgeon. The dates of these consultations are uncertain.

Dr. Biscaro performed a bone graft in March, 1973 at the Community Hospital in Missoula. In the late summer of 1973 Dr. Biscaro advised that the fracture had not healed and that further surgery was necessary. In November, 1973 Dr. Biscaro performed a bone graft, and insected a metal screw and a Rush rod. By August, 1974 when Sarah Baylor's deposition was taken, the healing of the leg looked good although she was still scheduled for periodic visits to Dr. Biscaro and his associate.

The Baylors filed suit against Dr. Jacobson on April 2, 1974 alleging medical malpractice and seeking damages of

- 3 -

$184,000. Defendant filed an answer which was substantially a general denial on July 11. This was subsequently amended to include the defense of contributory negligence. Interrogatories and answers were filed, depositions were taken, supplemental answers were filed, and a pretrial conference was held.

When plaintiffs failed to provide the name of their expert witness and answer defendant's interrogatories concerning this expert by April 11, 1975 as agreed, the district court granted defendant's motion and dismissed the entire litigation. This was subsequently vacated and the court granted plaintiffs until August 1, 1975 to name their expert and answer defendant's previous interrogatories concerning him. On July 29, 1975 plaintiffs stated they had an expert and answered further as follows:

> "Dr. Biscaro's deposition will be taken on July 31, 1975. He may be the only expert. If his testimony does not relate the negligence to plaintiff's condition, an expert will be retained and the background information sought herein immediately furnished."

The other interrogatories were answered "Not applicable".

Defendant moved for summary judgment. It was briefed by both defendant and plaintiffs, and orally argued. On September 30,1975 the district court granted defendant a summary judgment. The order granting summary judgment is set forth in full:

> "Larry E. Riley, Esq., counsel for the Defendant in this action, Dr. David P. Jacobson, has filed a Motion For Summary Judgment and has based his motion upon the documents in the court file, including depositions and Answers to Interrogatories.
>
> "This action is a malpractice action. The facts show that the Plaintiff, Sarah J. Baylor, sustained a fracture of the right leg. She was treated by the Defendant, and after about five and one-half months refused to return for an appointment with Dr. Jacobson. The condition of Plaintiff's leg

- 4 -

was such that surgical treatment was required about twenty-six months after the accident.

"The Plaintiffs designated Carlo Z. Biscaro, M.D., as the expert medical witness to be called on behalf of the Plaintiffs at time of trial. Dr. Biscaro's deposition was taken and he repeatedly stated that in his opinion there was proper care and treatment of Sarah J. Baylor by Dr. Jacobson.

"The Court finds that Sarah J. Baylor's refusal to continue medical treatment is a proximate cause of her subsequent problems with her leg.

"The Court further finds that the Plaintiffs' expert medical witness has not testified to any conduct on the part of Dr. David P. Jacobson which can be termed medical malpractice. Therefore,

"IT IS HEREBY ORDERED that the Defendant's Motion For Summary Judgment be granted without costs to any party."

On October 1 plaintiffs filed amended answers to defendant's interrogatories, identifying a New York doctor, Dr. Robert Tuby, as their expert witness and answering the other interrogatories. Plaintiffs' answer to interrogatory No. 12 sets forth the substance of Dr. Tuby's testimony:

"Dr. Tuby will testify that it was a deviation from acceptable medical practice to remove the cast at the time it was removed and to prescribe exercise therapy when there was practically no callus formation about the fracture site. He will further state that it was a deviation from acceptable medical practice to tell the patient that the injury was healed when it was not healed as shown by the X-ray films. Dr. Tuby will state that the exercise therapy and removal of the cast caused the lack of union, subsequent development of a bone necrosis, the subsequent surgical procedures, and the result which has [been] obtained."

Plaintiffs filed their notice of appeal from the summary judgment against them on October 10, 1975.

The ultimate issue on appeal is whether summary judgment for defendant was properly granted. This turns on two underlying issues.

(1) Is there sufficient expert testimony to raise a genuine issue of malpractice?

(2) Is there a genuine issue of material fact concern-

ing contributory negligence on the part of Sarah Baylor?

As background for our analysis of the issues, we note several basic rules of law applicable to medical malpractice actions. The gist of a malpractice action is negligence on the part of defendant. Negaard v. Feda, 152 Mont. 47, 446 P.2d 436, and cases cited therein. The mere fact of injury or the occurrence of a bad result, standing alone, is no proof of negligence in the ordinary malpractice action. Loudon v. Scott, 58 Mont. 645, 194 P. 488, 12 A.L.R. 1487. The law does not require that for every injury there must be a recovery of damages, but only imposes liability for a breach of legal duty by a doctor proximately causing injury to the patient. Loudon v. Scott, supra.

The legal duty imposed on a doctor has been described by this Court in the following language:

> " * * * The law requires a physician or surgeon
> to possess the skill and learning which is pos-
> sessed by the average member of the medical pro-
> fession in good standing, and to apply such skill
> and learning with ordinary and reasonable care.
> He is not an insurer, nor is a good result impliedly
> guaranteed. His obligation is merely to exercise
> such reasonable care and skill in the treatment of
> the patient as is usually exercised by physicians
> or surgeons of good standing, of the same school
> of practice in the community in which he resides,
> with due regard to the condition to the patient
> and the progress of medical or surgical science at
> the time. * * *" Dunn v. Beck, 80 Mont. 414, 421;
> 260 P. 1047.

The legal duty or standard of care imposed upon a medical specialist, such as the orthopedic surgeon in this case, is set forth in the following passage in 21 ALR3d 953:

> " * * * the general proposition that a physician
> or surgeon who holds himself out as having special
> knowledge and skill in the treatment of some par-
> ticular organ or disease must exercise, in his
> treatment of one who employs him as a specialist,
> that degree of skill and care ordinarily possessed
> and used by similar specialists, and that his duty
> to his patient is accordingly measured by a higher
> standard of skill than that of a general practitioner."

Ordinarily the standard of care to which a medical practitioner is held and the breach thereof must be established by expert medical testimony.  Collins v. Itoh, 160 Mont. 461, 503 P.2d 36, 81 ALR2d 597, and cases cited therein.

With these principles in mind, we proceed to consideration of whether summary judgment for defendant was properly granted.  Rule 56(c), M.R.Civ.P., authorizes a summary judgment when:

> " * * * the pleadings, depositions, answers to interrogatories, and admissions on file * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

It is not a substitute for a trial of disputed issues of fact. Dunjo Land Co. v. Hested Stores, 163 Mont. 87, 515 P.2d 961; Dean v. First National Bank, 152 Mont. 474, 452 P.2d 402.  A party seeking a summary judgment has the burden of establishing the absence of any genuine issue of material fact.  Meech v. Cure, 165 Mont. 49, 525 P.2d 546; Beierle v. Taylor, 164 Mont. 436, 524 P.2d 783, and cases cited therein.

Is there a genuine issue of material fact concerning malpractice in the instant case?  Or stated another way, is there expert medical testimony that establishes a genuine issue of material fact concerning the required standard of care and Dr. Jacobson's deviation therefrom?

The district court held there was not.  The district court stated in its order granting summary judgment that Dr. Biscaro, plaintiffs' designated expert medical witness, repeatedly stated that in his opinion " * * * there was proper care and treatment of Sarah J. Baylor by Dr. Jacobson", and that Dr. Biscaro " * * * has not testified to any conduct on the part of Dr. David P. Jacobson which can be termed medical malpractice."

- 7 -

At the outset we observe that plaintiffs' intended to call Dr. Biscaro to establish proximate cause, not malpractice. Plaintiffs' answers to defendant's interrogatories, filed July 29, 1975, provide in pertinent part:

"INTERROGATORY NO. 1

"Have you retained, or do you intend to call, an expert witness, or expert witnesses, to testify on behalf of the Plaintiffs at the time of the trial in the above-captioned case?

"ANSWER: Yes.

"INTERROGATORY NO. 2:

"If so, as to that expert, please state:

"(a) His name;

"(b) His age;

"(c) His residential address;

"(d) His business address.

"ANSWER:

"Dr. Biscaro's deposition will be taken on July 31, 1975. He may be the only expert. If his testimony does not relate the negligence to plaintiff's condition, an expert will be retained and the background information sought herein immediately furnished." (Emphasis added.)

Prior to the time Dr. Biscaro's deposition had been taken, specifically on October 4, 1974, the deposition of the defendant Dr. Jacobson had been taken. In our view his testimony and the medical records attached as deposition exhibits were sufficient to raise the issue of medical malpractice.

The crux of his testimony is contained in his answer to a hypothetical question. The assumed facts in the hypothetical question represented the facts of the case from plaintiffs' viewpoint and Dr. Jacobson was asked whether it would be acceptable medical practice to advise the patient to quit babying the leg and jump up and down on it. The doctor, after considerable repartee with defense counsel over whether he was talking about Sarah Baylor or not, indicated that under the

assumed facts it would not have been advisable to have the patient walk on the leg. This, in our view, is sufficient to establish an issue on medical malpractice precluding summary judgment. It is not the function of summary judgment to decide that issue but simply to establish whether an issue exists that requires determination and resolution at trial. Dean v. First National Bank, supra; Matteucci's Super Save v. Hustad Corp., 158 Mont. 311, 491 P.2d 705.

We note in passing that subsequent to summary judgment plaintiffs filed amended answers to interrogatories indicating that they intended to call Dr. Tuby to establish malpractice and proximate cause. This was not before the district court at the time it ruled on summary judgment, nor was any attempt made to bring this matter before the court for consideration or adjudication. The district court cannot be held in error on the basis of documents not before it at the time it made its ruling.

The district court granted summary judgment on the additional ground that it found that " * * * Sarah J. Baylor's refusal to continue medical treatment is a proximate cause of her subsequent problems with her leg." Here again the district court has made a factual determination of the cause of her injuries in granting summary judgment. It ignores her deposition testimony and that of her husband that she continued to put weight upon her leg and practiced walking on it as advised by the doctor. It eliminates her testimony that she did not know there was a nonunion at the site of the fracture and that Dr. Jacobson did not tell her there was a nonunion. It rejects the reasons and justification that Sarah Baylor and her husband gave for discontinuing consultations with Dr. Jacobson. These considerations establish an issue on proximate cause that precludes

summary judgment.

We pass no judgment on the merits of this case. The ultimate determination of the issues here must be decided at trial. We simply hold that there are genuine issues of material fact that preclude summary judgment in advance of trial.

The summary judgment of the district court is reversed. The cause is remanded to the district court of Missoula County for further proceedings.

_____
                            Justice

We concur:

_____
Justice

_____
Hon. Bernard Thomas, District
Judge, sitting in place of Mr.
Chief Justice James T. Harrison.

- 10 -

Mr. Justice Wesley Castles dissenting:

I respectfully dissent.

In my view the determinative question is whether plaintiffs presented sufficient expert testimony to establish an issue of malpractice.

In Collins v. Itoh, 160 Mont. 461, 470, 503 P.2d 36, this Court said:

> " * * * The well-recognized rule, subject to
> certain exceptions, is that there must be
> expert testimony to establish negligence in
> a malpractice action."

Here, plaintiffs rely on defendant's deposition to supply the required expert testimony. They constructed a hypothetical question which they maintain is representative of their viewpoint of the facts of this case. Plaintiffs then asked defendant if it would be acceptable medical practice to advise the patient in the hypothetical question to jump up and down on her leg. Defendant said no. Plaintiffs find a contradiction between this response and the defendant's alleged treatment of plaintiff Sarah Baylor. Upon this premise they contend the issue of malpractice is raised and summary judgment is precluded.

I disagree. The deposition shows the defendant emphatically and persistently refused to accept the hypothetical as an accurate statement of this case. It is clear defendant perceived significant differences between the facts of this case and the assumed facts in the hypothetical. He did not intend his response to apply to the medical history of plaintiff Sarah Baylor and he explicitly said so. There is no other expert testimony as to the required standard of care or its breach by defendant.

There comes a time when the district court must be allowed to enter summary judgment. The complaint in this action was filed April 2, 1974. The summary judgment which is the

- 11 -

subject of this appeal was entered September 30, 1975.  At
that time plaintiffs had still not presented an expert witness
to the district court who would testify that defendant was
negligent in his treatment of plaintiff Sarah Baylor.

In the absence of such expert testimony I would affirm
the judgment of the district court.

_____
                    Justice

Mr. Justice John Conway Harrison dissenting:

I concur in the foregoing dissent of Mr. Justice
Wesley Castles.

_____
                    Justice