No. 94-394

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

MONTANA MINING PROPERTIES, INC.,
a Montana corporation,

       Plaintiff and Appellant,

   -v-

ASARCO, INC., a New Jersey
corporation, DENNIS R. WASHINGTON,
MONTANA RESOURCES, INC., a Montana
corporation, and MONTANA RESOURCES,
a General Partnership,

       Defendants and Respondents.

FILED

APR 1 1 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          R.D. Corette, John T. Johnston, Corette, Pohlman,
Allen, Black & Carlson, Butte, Montana

      For Respondents:

          Ronald B. MacDonald, Darla J. Keck, Datsopoulos,
MacDonald & Lind, Missoula, Montana

Submitted on Briefs: January 12, 1995

Decided: April 11, 1995

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Plaintiff and Appellant, Montana Mining Properties (hereinafter MMP), appeals from a decision and order of the Second Judicial District Court, Silver Bow County, granting Defendants' and Respondents' Dennis R. Washington, Montana Resources, Inc. and Montana Resources, a general partnership (hereinafter Washington), motion for summary judgment. We reverse and remand for trial.

MMP raises four issues on appeal, however, we shall only address one issue, as that issue is dispositive. We state the issue as follows:

1. Whether the District Court erred in granting Washington's motion for summary judgment where genuine issues of material fact exist regarding MMP's alleged breach of contract, and regarding Washington's waiver of the claimed right to terminate the contract.

Washington and MMP entered into a contract dated January 27, 1987, which was executed in June 1987, wherein Washington agreed to sell, and MMP to buy two mining properties and equipment located in Butte, Montana. The first property, known as the "Main Butte Property," was sold to MMP for three million dollars in cash. The parties agree that this sum has been paid. The second property, known as the "North Butte Property," sold for $500,000, and the equipment on the property was sold for three million dollars. The contract provided that half of the price of the equipment (1.5 million dollars) was to be paid in cash, and there is no dispute that this part of the contract was performed.

The dispute arose from the agreement provisions concerning the

$500,000 payment for the "North Butte Property" and the 1.5 million dollar payment, which represents the balance for the price of the equipment. According to the agreement, these amounts were to be paid to Washington in:

> [U]nrestricted free trading common stock of a corporation or corporations, which have directly or indirectly through a subsidiary corporation, an interest in any part of the property referred to under this Agreement. .

"Butte Mining PLC," was the public company from which the stock was to be issued. Butte Mining PLC was organized and promoted in London by Clive J. Smith who was one of four joint venturers who controlled MMP. The joint venture used MMP as a vehicle to acquire mining properties that were then transferred to Butte Mining PLC. Shares in this company were then sold in public stock offerings.

Payment for the "North Butte Property" was to be made "in a timely fashion" but in no event was the purchase payment to exceed ten months from the date of the agreement. Payment for the equipment was to be made "on or before the 21st day of September, 1987." The agreement expressly provided that time was of the essence with respect to the payments, and it contained an express termination clause, wherein Washington was entitled to terminate the contract in the event of default. The agreement granted to MMP a "first right of refusal to acquire an interest in any mineral property owned by Washington in the Butte Mining District."

On October 8, 1987, Washington received a facsimile from Bryant & Company, an accounting firm located in Jersey, Channel islands. The facsimile indicated that Bryant & Company had been

instructed to release to Washington's order, 1.5 million dollars worth of Butte Mining PLC shares, representing the balance due on the equipment. The facsimile further noted that Bryant & Company was awaiting Washington's instructions with respect to the stock. On November 6, 1987, Bryant & Company sent Washington another facsimile advising Washington that it was holding $500,000 worth of Butte Mining PLC shares to Washington's order. This stock represented the $500,000 due under the contract for the land.

Washington does not deny receiving these facsimiles, and in fact acknowledged by return correspondence that Bryant & Company was holding the stock until it received further instructions from Washington's attorney. Washington maintains however, that he was surprised by this turn of events as he had never authorized Bryant & Company to hold his stock. Nevertheless, Washington alleges he was not initially concerned about Bryant & Company holding his stock, as he believed the stock certificates would be immediately forwarded to him for his disposition. MMP alleges that Washington, through his attorney, had agreed that MMP was to deliver the stock to Bryant & Company. MMP further argues that Washington did not object to the method and manner of the stock delivery between November 6, 1987 and March 14, 1989. Washington, however, argues that his attorney contacted Bryant & Company and Mr. Smith and informed them to sell the stock. Washington points to a letter dated April 18, 1988, wherein Washington's attorney sent a letter to Mr. Smith in care of Bryant & Company stating that Washington did want the shares of stock sold.

Washington maintains that he never gained possession, dominion or control over the stock. In addition to the above evidence, Washington testified that he was never sent any documents regularly disseminated to Butte Mining PLC shareholders, nor given dominion over the shares. Washington alleges that he was unable to sell the shares because Mr. Smith retained control over the escrow where the stock was held. Washington argues that this evidence taken together demonstrates that the shares held by Bryant & Company were not under his control, and accordingly he was not paid the monies due him under the terms of the contract. Accordingly, Washington concluded that MMP was in breach of the contract, and filed suit against MMP on March 15, 1989. Washington also served MMP with a Notice of Default notifying MMP that unless it cured the alleged default within 30 days, Washington had the right to cancel the agreement. MMP answered Washington's complaint and denied the allegations that it had breached the contract. MMP maintained that its deliveries of stock to the holding company constituted valid deliveries under the contract.

On April 25, 1989, Washington publicly announced he had entered into a contract with ASARCO, Inc. for the sale of certain mining properties located in Butte to ASARCO. On or about April 26, 1989, Washington sent MMP a document entitled "Notice of Sale and First Right of Refusal." This document noted the offer of purchase Washington had received from ASARCO, and indicated that MMP had thirty days to notify Washington whether MMP wished to exercise its first refusal right. In a letter accompanying the

5

above offer, Washington requested that MMP "formally waive **its** first right of refusal in and to the copper mining properties."

On May 10, 1989, MMP filed an action in the District Court alleging that Washington had breached the January 27, 1987 agreement because Washington had entered into an agreement to sell mineral property in the Butte Mining District without providing MMP an opportunity to exercise its first right of refusal. MMP sought money damages and injunctive relief barring the closing of the contract between Washington and ASARCO. The District Court held a hearing regarding MMP's request for an injunction to determine the primary issue of whether MMP had breached the contract. Washington argued that MMP had violated the terms of the contract, and therefore he was entitled to terminate the contract, and MMP was not entitled to enforce its first right of refusal. In a memorandum opinion and order dated May 26, 1989, the District Court found MMP had not validly transferred the Butte Mining PLC shares to Washington, that Washington did not have dominion or control over the stock and therefore MMP had not validly made payments under the contract. The court therefore concluded that MMP had breached the contract, and denied MMP's request for a preliminary injunction.

On June 22, 1989, MMP filed a motion to disqualify the District Court Judge, and moved to vacate the District Court's memorandum opinion and order. We issued a decision concerning MMP's **motion to** vacate the order denying injunctive relief in our order dated December 21, 1989. In that order, we dismissed MMP's

appeal of the District Court's order denying injunctive relief because MMP's motion was not timely filed and the notice of appeal relative to the District Court's order was also not timely filed. Our order of December 21, 1989, was final as to any further issue concerning the District Court's denial of injunctive relief.

Regarding MMP's motion to disqualify the presiding judge, we issued a writ of supervisory control requiring that all further proceedings be assigned to another district judge who had not previously participated in the case. Washington v. Montana Min. Properties (1990), 243 Mont. 509, 795 P.2d 460.

Subsequently, another district court judge assumed jurisdiction, and on August 2, 1991, Washington filed a motion for summary judgment primarily asserting that MMP had breached the agreement because it failed to deliver the stock. After considering the parties' briefs and arguments, the District Court granted Washington's motion for summary judgment. MMP appeals from this order.

This court's standard of review in appeals **from** a summary judgment is de novo. Therefore, we review a summary judgment utilizing the same criteria initially used by the District Court under Rule 56(c), M.R.Civ.P. Brinkman & Lenon v. P & D Land Enterprises (1994), 263 Mont. 238, **241, 867** P.2d **1112, 1114.** According to Rule 56(c), M.R.Civ.P., summary judgment **may** only be rendered when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.

The moving party has the initial burden of demonstrating that

7

there are no genuine issues of material fact. Morton v. M-W-M, Inc. (1994), 263 Mont. 245, 249, 868 P.2d 576, 579. If the moving party is able to meet this burden of proof, the non-moving party must then demonstrate the existence of a genuine issue of material fact. Morton, 868 P.2d at 579. Under Rule 56(e), M.R.Civ.P., the non-moving party may not rest upon the mere allegations or denials of the adverse party's pleading, but must demonstrate by its response, affidavits, or otherwise that there is a genuine issue for trial. Any factual evidence which can be drawn from the record must be resolved in favor of the non-moving party. D'Agostino v. Swanson (1990), 240 Mont. 435, 442, 784 P.2d 919, 924.

In the instant case, after examining the record in a light most favorable to MMP, we conclude there is a genuine issue of material fact concerning whether the parties agreed to Bryant & Company holding the stock.

In granting Washington's motion for summary judgment, the District Court concluded that MMP materially breached the contract by failing to deliver the stock to Washington. The court stated in its order:

> The facts clearly show that Plaintiff materially breached the contract with the Washington defendants. The delivery by Plaintiff to the Washington defendants of shares of unrestricted free-trading stock in Butte Mining P.L.C. was the essence of the consideration. The facts are undisputed that Plaintiff issued the shares and had them held by Bryant & Company; that the Washington defendants and Plaintiffs sent correspondence back and forth over these shares; and that one of Plaintiff's officers, Clive Smith had the shares held in a trust naming his daughters as beneficiaries. The facts are also undisputed that the Washington defendants were never issued stock certificates nor given any documents regularly disseminated to Butte Mining P.L.C.

8

shareholders, and the Washington defendants' orders to sell the shares were never complied with. The Washington defendants lacked dominion and control over these shares.

Overall, there is no dispute that the Washington defendants did not receive their shares of unrestricted free trading stock by the September-November, 1987 deadlines as required under the contract.

However, upon review of the record, we conclude that the facts concerning whether MMP's delivery of the stock to Bryant & Company constituted a material breach are in dispute. The District Court ignored the conflicting testimony of the parties concerning whether the parties agreed to Bryant & Company holding the stock.

Mr. Smith argues that he fulfilled his obligations under the contract. He maintains that Washington, through his attorney Milton Datsopoulos, agreed that MMP was to deliver the stock to Bryant & Company. Mr. Smith also notes that the contract does not specify or define the manner or method in which the stock was to be delivered. Washington and his attorney, however, testified that neither had agreed that the stock would be delivered to Bryant & Company.

This dispute is in our view sufficient to establish an issue concerning whether MMP failed to deliver the stock. "It is not the function of summary judgment to decide that issue but simply to establish whether an issue exists that required determination and resolution at trial." Baylor v. Jacobson (1976), 170 Mont. 234, 242, 552 P.2d 55, 59. Accordingly, after reviewing this evidence as we must in favor of MMP, the non-moving party, we conclude that a factual dispute exists concerning the delivery of the stock thereby precluding summary judgment under Rule 56(c), M.R.Civ.P.

9

MMP also argues that Washington is precluded from a summary judgment because a question of fact exists concerning whether Washington waived his right to terminate the contract. MMP suggests the following facts demonstrate the existence of a genuine issue of material fact. We agree.

On March 14, 1989, Washington sent MMP a "Notice of Default," essentially asserting that MMP had defaulted under the terms of the contract because it had failed to deliver the unrestricted free trading stock. The notice granted MMP thirty days to correct the alleged default. The next day, Washington filed a complaint alleging that MMP had failed to deliver the payment of the unrestricted stock as required by the agreement. Washington requested relief in the alternative; either termination of the contract or damages in the amount due under the contract. On April 26, 1989, Washington served MMP with a Notice of Sale and First Right of Refusal, along with a letter requesting that MMP provide a formal written waiver. The letter stated:

> Although I prefer that your client provide formal written waiver, I nevertheless felt an obligation to forward on to Montana Mining Properties, Inc. the Notice of Sale and First Right of Refusal for purposes of complying with Section 6 of the Agreement dated January 27, 1987 .

Finally, on May 4, 1989, Washington informed MMP that he was terminating the contract and withdrawing the Notice of Sale and First Right of Refusal.

This sequence of events is not in dispute, however, it does raise the question of whether Washington waived his right to terminate the agreement. It is well established that waiver is the

10

voluntary relinquishment of a known right. McGregor v. Mommer (1986), 220 Mont. 98, 110, 714 P.2d 536, 543. It is for the trier of fact to determine whether an act is voluntary and the actor's intent. McGregor, 714 P.2d at 544. Consequently, we conclude that the sequence of events raise as an issue of fact Washington's intent when he delivered the inconsistent documents, which, on the one hand, appear to maintain that the contract was terminated by breach, but on the other hand, appear to acknowledge the continuing existence of the contractual right of first refusal.

upon review of the record, we conclude that there are material fact issues that cannot be disposed of by summary judgment. Accordingly, we reverse and remand for further proceedings.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

April 11, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent **by** United States mail, prepaid, to the following named:

R. D. Corette, Esq. and Robert M. Carlson, Esq.
and John T. Johnston, Esq.
Corette, Pohlman, Allen, Black & Carlson
P.O. Box 509
Butte, MT 59703

Anthony F. Phillips, Esq.
Willkie, Farr & Gallagher
One Citicorp Center
153 E. 53rd St.
New York, NY 10022

Ronald B. MacDonald, Esq.
Datsopoulos, MacDonald & Lind, P.C.
201 W. Main, Central Square Bldg.
Missoula, MT 59802

Ross Richardson, Esq.
Henningsen, Vucurovich & Richardson
P.O. Box 399
Butte, MT 59071

Laura Hoguet, Esq.
White & Case
1155 Avenue of the Americas
New York, NY 10036

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *N. Gallagher*
Deputy