No. 00-029

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 330N

PAT CUNNINGHAM,

Plaintiff and Respondent,

v.

SRS CRISAFULLI, INC., a Delaware corporation,

Defendant and Appellant.

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Dawson,

The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Mark E. Noenning; Hendrickson, Everson, Noenning & Woodward,

Billings, Montana

For Respondent:

Charles F. Unmack; Hubble, Ridgeway & Phillips, Stanford,

Montana

Submitted on Briefs: May 4, 2000
Decided: December 14, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Patrick Cunningham (Cunningham) filed suit to recover damages from his former employer, SRS Crisafulli, Inc. (SRS) for the breach of the agreement terminating his employment. Cunningham moved for summary judgment and SRS filed a cross-motion for summary judgment. The District Court, Seventeenth Judicial District, Dawson County, granted summary judgment for Cunningham. SRS appeals from that judgment. We reverse the granting of summary judgment for Cunningham, affirm the denial of summary judgment for SRS and remand for further proceedings.

¶3 The issue presented is whether there are substantial questions of material fact precluding the granting of summary judgment as to the existence and breach of an alleged contract.

¶4 The standard of review in appeals from a ruling on cross-motions for summary judgment is *de novo*. The burden is on the movant to demonstrate there exists no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Once that is accomplished, the burden shifts to the non-moving party to show, by more than a mere denial and speculation, that genuine issues do exist. If the court concludes that there are no genuine issues of material fact, then it must determine whether the moving party is entitled to judgment as a matter of law. Am. Fed. Sav. & Loan v. Madison Valley, 1998 MT 93, ¶ 12, 288 Mont. 365, ¶ 12, 958 P.2d 57, ¶ 12.

The Undisputed Facts

¶5 Cunningham was employed as the president of SRS from March 1996 until the time of his resignation. On April 6, 1999, Richard Memhard (Memhard), acting on behalf of the Board of Directors, sent Cunningham a letter indicating that:

> The Company's Board of Directors has instructed me to ask you for your resignation as President and an employee of the Company, to be effective April 16, 1999.
>
> Contingent upon your signing a release in form satisfactory to the Company, . . . the Company will pay you severance pay equal to two months' salary, payable in biweekly installments.
>
> If you submit your resignation as requested, the Board will treat your resignation as voluntary.
>
> . . . .
>
> Please advise me tomorrow by phone or fax whether you will submit your resignation subject to the terms outlined in paragraph two above. In any event, I am instructed to advise you that the Board wishes you to remove your personal property and to be off Company premises on or before April 16, 1999.

¶6 Although it appears the letter was sent on April 6, 1999, Cunningham was out of the office and did not receive the letter until April 12, 1999. Cunningham prepared a fax transmission in response to the letter on April 12, 1999. The parties agree that prior to sending the fax Cunningham had a phone conversation with Memhard.

¶7 Following the conversation, Cunningham transmitted the fax message that he had previously prepared. This fax correspondence indicated that he would agree to resign with the understanding that his severance would be paid at 100% of his posted salary rate and that he would receive payment of 37.5 days of accrued vacation.

¶8 Memhard, in his affidavit, acknowledges receipt of the fax at approximately 11:30 a.m., mountain daylight time, on April 12, 1999. He indicates that he read the fax and became astonished and outraged. Memhard instructed Lane Holte to distribute to all employees a memorandum announcing Cunningham's resignation.

¶9 There was no further communication between Cunningham and Memhard on behalf of SRS until April 27 when Memhard sent a letter stating objections to the terms. However,

by that time the resignation had been announced and Cunningham had left the office.

## The District Court Ruling

¶10 The District Court found that SRS initiated the course of events by offering Cunningham an opportunity to resign his position rather than be fired. The court stated: "He could have accepted the offer to resign and receive two months severance pay or choose to be fired and then look at his legal options to possibly contest such a firing." Cunningham communicated a qualified acceptance to SRS, that he would resign upon payment of two months' severance pay based upon 100% of his established salary and payment of 37.5 days of accrued and unused vacation. The District Court found that this communication changed the terms of SRS's original offer and, as such, became a counter offer. Upon receipt of the counter offer, the court reasoned that SRS had three options: First, SRS could reject the counter offer outright and fire Cunningham. Second, it could refuse the qualified acceptance and continue discussion of the terms of severance pay. Finally, it could accept on Cunningham's terms. The court concluded that SRS did not communicate either of the first two options. "Instead, [SRS] chose to announce generally to all the employees the resignation of [Cunningham] from his position as president and announced the hiring of a new president to take his place."

¶11 The District Court concluded that SRS's announcement to all company employees that the president had resigned constituted an acceptance of Cunningham's offer to resign. "Announcement of an offered resignation constituted acceptance of the consideration offered with [Cunningham's] proposal." The court also concluded that, by announcing the resignation of Cunningham, SRS "accepted the benefit of the arrangement and has, therefore, consented to the obligations arising from the proposal presented to it . . . . " The court then ordered as follows:

> Now, therefore, based upon the foregoing, the Court concludes that there was an agreement reached by the parties and that such agreement provided that the Plaintiff would be paid two months severance pay at 100% of his then current salary as opposed to the 90% that he had been receiving and that he was to receive payment for 37.5 days of accrued and unused vacation. Based upon these conclusion, IT IS ORDERED that summary judgment be GRANTED to the Plaintiff.

## Discussion

¶12 Cunningham contends that the District Court was correct in finding that the written communications between the parties contained the elements of a binding contract. He points to the April 6, 1999 letter from Memhard as containing "an offer to be fired or resign with a severance package" contingent on signing a release and the April 12, 1999 facsimile letter from Cunningham accepting the option of resignation, but clarifying the terms of payment. This latter letter constituted a counter offer which Memhard accepted by distributing a memo on April 12, 1999, announcing Cunningham's resignation. Cunningham then argues that he performed his obligations under the contract through April 27, 1999, when he received a letter from Memhard repudiating the contract.

¶13 SRS contends that the option to treat the termination as voluntary was for Cunningham's benefit, not the benefit of SRS and that the offer of severance pay was not contingent upon Cunningham resigning rather than being fired. Cunningham accepted the resignation option but countered for a much larger severance package. SRS submits that it did not accept Cunningham's counter offer. By the time that Cunningham communicated his counterproposal, he had already announced that he had resigned. Memhard's memorandum of April 12, 1999 was not intended to be communicated to Cunningham nor did it establish any meeting of the minds on the terms of severance.

¶14 Although the District Court acknowledged that there was dispute as to some facts, it determined that those facts were not material and thus it proceeded to conclude, as a matter of law, that a contract had been entered into and to grant summary judgment for Cunningham. We conclude that the court erred in this regard; there are genuine disputes as to material facts which preclude the granting of summary judgment.

¶15 In Montana Mining Properties v. ASARCO (1995), 270 Mont. 458, 893 P.2d 325, Washington Corporation (Washington) filed a breach of contract action against Montana Mining Properties (MMP); a prospective purchaser of some mining properties and equipment. Washington contended that MMP had breached the contract in failing to deliver stock to Washington as agreed. MMP contended that it had complied with the contract by having the stock held by Bryant & Company. Concluding that MMP had breached the contract as alleged, the District Court granted summary judgment to Washington. On appeal, we noted that MMP argued that Washington, through its counsel, agreed that MMP was to deliver the stock to Bryant & Company. Further, MMP pointed out that the contract did not specify the manner or method in which the stock was to be delivered. We held that there was a dispute as to what had been agreed upon and reversed the summary judgment holding that there was an agreement and a breach of that

agreement.

> This dispute is in our view sufficient to establish an issue concerning whether MMP failed to deliver the stock. "It is not the function of summary judgment to decide that issue but simply to establish whether an issue exists that required determination and resolution at trial." *Baylor v. Jacobson* (1976), 170 Mont. 234, 242, 552 P.2d 55, 59. Accordingly, after reviewing this evidence as we must in favor of MMP, the non-moving party, we conclude that a factual dispute exists concerning the delivery of the stock thereby precluding summary judgment under Rule 56(c), M.R.Civ.P.

*Montana Mining Properties,* 270 Mont. at 465, 893 P.2d at 329.

¶16 We also concluded that summary judgment was precluded because a question of fact existed as to whether Washington, in delivering inconsistent documents, had waived its right to terminate the contract. Noting that waiver is the relinquishment of a known right, we held that since Washington's intent was at issue: "It is for the trier of fact to determine whether an act is voluntary and the actor's intent." *Montana Mining Properties*, 270 Mont. at 466, 893 P.2d at 330.

¶17 As we did in *Montana Mining Properties*, we now determine that there is a genuine dispute as to what, if anything, Cunningham and SRS agreed upon and hold that the District Court erred in ruling, as a matter of law, that there was a breach of contract.

¶18 The parties dispute whether the offer of severance pay in the initial letter from Memhard on April 6, 1999 was conditioned on Cunningham's choosing resignation over termination, or whether it merely required that he execute a release. There is a genuine dispute as to what Memhard and Cunningham discussed on the telephone before Cunningham sent the April 12 fax transmission. Cunningham contends that he discussed the terms of his draft counter-offer, i.e., severance pay at 100% of full salary and payment for accrued vacation days. Memhard denies that those topics were discussed. They dispute whether Cunningham had already announced that he had been coerced into resigning before he forwarded his so-called counter offer of resignation. There is a genuine dispute as to whether Memhard intended that his April 12, 1999 memorandum to employees be communicated to Cunningham and, more particularly, whether it was intended as an acceptance of Cunningham's counter-offer. Contrary to the District Court's finding of a meeting of the minds, Memhard's affidavit indicates that "at no time was any agreement ever reached between plaintiff and me concerning severance pay and vacation pay."

Memhard's intent, like Washington's intent in *Montana Mining Properties*, raises a genuine issue of fact.

¶19 Some of these disputes involve mixed questions of law and fact. However, to the extent that the issues are factual, they are material to the final legal question; that is, whether there was an offer, acceptance and consideration sufficient to form a legally binding contract.

¶20 In light of the genuine questions of fact, we determine that the District Court erred in granting summary judgment to Cunningham. We reverse the granting of summary judgment for Cunningham, affirm the denial of summary judgment to SRS and remand for further proceedings consistent herewith.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY