M. Floyd Bailey, Jr., appeals from a judgment entered on a jury verdict in favor of James H. Faulkner III in Faulkner's action against Bailey arising out of a consensual, sexual relationship between Bailey and Paris Faulkner, who, at the time of that relationship, was Faulkner's wife. We reverse and remand.
 I. Factual Background
In December 1999, the Faulkners were attending the Dalraida Church of Christ in Montgomery ("Dalraida"). Bailey, who has a bachelor of arts degree in Bible from Faulkner University, was Dalraida's pastor. At that time, the elders of Dalraida hired Paris to serve as the church secretary. The job responsibilities of the secretary and the pastor occasioned frequent personal interaction between Paris and Bailey.
Bailey soon discovered that the Faulkners were engaged in marriage counseling with Dr. Terry Gunnels, a licensed counselor. In March 2000, Bailey began advising the Faulkners regarding their marital problems, and they discontinued their counseling sessions with Dr. Gunnels. According to James Faulkner, Bailey "assured" them that "he could spend a lot more time with [them] than [Dr.] Gunnels," and "guaranteed" them that "he could fix [their] marriage." That same month, Bailey and Paris secretly began a consensual, sexual relationship that lasted until July 2000.
In April 2000, Bailey learned that James had been offered employment in Baldwin County and that Paris did not want to move. Bailey urged James to decline the job offer, saying that the move "could break [the Faulkners'] marriage." James took Bailey's advice and declined the offer.
The relationship ended after James discovered it and confronted Paris and Bailey. After initially denying his involvement with Paris, Bailey eventually admitted it and resigned as pastor of Dalraida. Paris unsuccessfully sought reconciliation with James, who initiated divorce proceedings. The Faulkners were divorced on January 4, 2001.
On February 5, 2002, Faulkner sued Bailey. The complaint stated, in pertinent part:
 "7. Defendant M. Floyd Bailey, Jr., while acting within the line and scope of his employment with [Dalraida], assumed the duty to counsel [Faulkner], and his wife at the time, concerning their marriage.
 "8. Defendant M. Floyd Bailey, Jr., while acting within the line and scope of his employment with [Dalraida], negligently [and/or wantonly] performed said duties.
 "9. As a proximate result of such negligence [and/or wantonness], Plaintiff James H. Faulkner, III, was damaged by the failure of his marriage and he has suffered extreme *Page 249 mental anguish as a result thereof."
(Emphasis added.)
The negligence and wantonness claims were tried before a jury. During the trial, Bailey filed timely motions for a judgment as a matter of law ("JML"). He argued, among other things:
 "[I]t is clear from the testimony [that] this is . . . a case of alienation of affection. It is couched in terms of negligent counseling to try to formulate a lawsuit. The testimony has been that Mr. Faulkner's damage was because of the affair. He said [he was] damaged because [Paris and Bailey] had the affair and it led to [his] divorce, which is the exact definition of alienation of affection."
The trial court denied those motions and instructed the jury on negligence and wantonness. The jury was instructed on compensatory damages, including damages for mental anguish, and on punitive damages. The jury awarded $67,000 compensatory damages and $2,000,000 punitive damages. After the trial, Bailey renewed his motion for a JML and, alternatively, moved for a new trial or a remittitur. The trial court reduced the punitive-damages award to $1,617,000, pursuant to Ala. Code 1975, §§ 6-ll-21(d) and (f), but otherwise denied Bailey's postjudgment motion.
Bailey appealed. On appeal, he contends, among other things, that he is entitled to a JML, because, he argues, the claims Faulkner asserted at trial are, in substance, a claim of "alienation of affections," which, he argues, is not a cognizable theory of recovery under Alabama law. Alternatively, he argues that he provided the Faulkners "ministerial counseling," and that Faulkner's claims essentially allege "clergy malpractice," a cause of action that, Bailey insists, Alabama does not recognize. Faulkner contends that his claims allege negligent or wanton "marital counseling," which, he argues, is a cognizable cause of action in Alabama. We deem the dispositive issue to be whether Faulkner's claims amount to, in reality, a claim of alienation of affections traveling under the guise of negligent or wanton marital counseling.[1]
 II. Discussion
The standard by which we review a ruling on a motion for a JML is "`materially indistinguishable from the standard by which we review a summary judgment.'" Flint Constr. Co. v.Hall, 904 So.2d 236, 246 (Ala. 2004) (quoting Hathcockv. Wood, 815 So.2d 502, 506 (Ala. 2001)). Thus, the standard of review is de novo. See Story v. RAJProps., Inc., 909 So.2d 797, 801 (Ala. 2005); House v.Jefferson State Cmty. College, 907 So.2d 424, 426-27
(Ala. 2005); and Crutcher v. Wendy's of North Alabama,Inc., 857 So.2d 82, 85 (Ala. 2003).
Bailey contends that the purported negligent/wanton-counseling claims "are really claims for alienation of affections and therefore barred by Ala. Code §§ 6-5-331 (1975)." Bailey's brief, at 25. "[T]he so-called `heart balm' or amatory torts,"Doe v. Moe, 63 Mass.App.Ct. 516, 521, 827 N.E.2d 240,245 (2005), were abolished by §§ 6-5-331, Ala. Code 1975, which provides: "There shall be no civil claims for alienation *Page 250 
of affections, criminal conversation, or seduction of any female person of the age of 19 years or over."
"The gist of an alienation of affections action is theintentional or purposeful. . . . interferencewith the marriage relationship." D.D. v. C.L.D.,600 So.2d 219, 222 (Ala. 1992) (emphasis added). "An action for alienation of affection permitt[ed] recovery for 'loss of consortium, humiliation, shame, mental anguish, loss of sexual relations, and the disgrace the tortious acts of the defendant have brought.'" Andrews v. Gee, 599 F.Supp. 251, 253
(D.S.C. 1984) (quoting Scott v. Kiker,59 N.C.App. 458, 462, 297 S.E.2d 142, 146 (1982)). See also Parker v.Newman, 200 Ala. 103, 75 So. 479 (1917). Another element of damage is pecuniary loss, such as loss of income. Heistv. Heist, 46 N.C.App. 521, 265 S.E.2d 434 (1980). Additionally, "punitive damages [could] be recovered for the tort of alienation of affections." Nelson v. Jacobsen,669 P.2d 1207, 1219 (Utah 1983); see also Bland v. Hill,735 So.2d 414, 420-21 (Miss. 1999); and Oddo v. Presser,158 N.C.App. 360, 367, 581 S.E.2d 123, 129 (2003), reversedon other grounds, 358 N.C. 128, 592 S.E.2d 195 (2004).
Since the abolition in Alabama of the heart-balm torts, this Court has refused to recognize "any claim for damages against a third party, no matter how denominated, that is based on allegations of interference with the marriage relationship." D.D., 600 So.2d at 223 n. 5 (emphasis added). For example, in D.D., this Court affirmed a summary judgment for the paramour and against the husband in his action against his wife's paramour for interfering with, and causing the dissolution of, his marriage. 600 So.2d at 221.
The husband's action purported to state claims of (1) abuse of process, (2) invasion of privacy, (3) negligence, (4) wantonness, and (5) intentional infliction of emotional distress.
 "Specifically, the abuse of process claim [was] based on allegations that the third party [had] conspired with the wife to use the divorce action to establish that the husband was not the biological father of the child for the purpose of 'depriving him of his . . . constitutionally protected liberty interest in his relationship with [the child]'; the invasion of privacy claim [was] based on allegations that the third party [had] 'made repeated telephone calls to [the husband and wife's] residence for the purpose of interfering with [the husband's] effort to preserve the integrity of his family'; the negligence and wantonness claims [were] based on allegations that the third party, after being told by his psychotherapist that his relationship with the wife was detrimental to the husband's physical and mental well-being, [had] `persisted and continued to contact [the husband and wife's home]'; and the claim alleging intentional infliction of emotional distress [was] based on allegations that the third party [had undertaken] and pursued a `sustained course of conduct to disrupt and destroy the integrity of [the husband's] family . . . 1) by refusing [the husband's request] that he stop seeing and contacting [the wife and persisting in] his meetings and telephone conversations with [the wife,] while falsely representing to [the husband] . . . that his purpose for continuing the relationship with [the wife] was . . . to see if [the third party and the husband] could keep [their respective] family units together . . . 2) by having clandestine meetings with [the wife] in shopping center parking lots, public parks and other places . . . 3) by telephoning and otherwise making contact with [the wife without the husband's *Page 251 
knowledge] . . . 4) by [threatening] to [get a] divorce and [to marry the wife] if [the husband interfered with his relationship with the wife] . . . 5) by secretly . . . having genetic blood tests performed on himself, on [the wife], and on the child . . . 6) by lying to [the husband as to whether blood tests had been performed] . . . 7) by concealing from [the husband] his licentious relationship with [the wife] and the possibility [that] he [the third party] was [the child's] biological father . . . and 8) by surreptitiously forming [a partnership] with the wife . . . to conceal [the fact that he had purchased a house for her].'"
600 So.2d at 221-22 (footnote omitted). Although the complaint was conspicuously devoid of any claim denominated as anamatory claim, this Court held that each of the husband's claims was "based on allegations that he [was] entitled to damages as a result of the third party's interference with his marriage"; was, "in effect, one alleging alienation of affections"; and was, therefore, "barred by §§ 6-5-331." 600 So.2d at 222-23 (emphasis added).
Other courts have held that a husband's claim of negligent marital counseling or clergy malpractice, based on allegations that his wife and the minister or marriage counselor had engaged in sexual misconduct under the auspices of a counselor-counselee relationship, was merely a restyled alienation-of-affections claim, for which no relief was afforded.Strock v. Pressnell, 38 Ohio St.3d 207, 527 N.E.2d 1235
(1988); Gasper v. Lighthouse, Inc., 73 Md.App. 367,533 A.2d 1358 (1987); and Lien v. Barnett, 58 Wash.App. 680,794 P.2d 865 (1990) ("gravamen" of congregant's action alleging negligent counseling and pastoral malpractice was alienation of affections).
In Strock, for example, Richard Strock and his wife, Suzanne, sought marital counseling from "James Pressnell, minister of the Shepherd of the Ridge Lutheran Church."38 Ohio St.3d at 208, 527 N.E.2d at 1236. During the counseling period, Pressnell and Suzanne "engaged in consensual sexual relations."Id. After Richard discovered the relationship, he divorced Suzanne and sued Pressnell asserting claims of "clergy malpractice, breach of a fiduciary duty, fraud, misrepresentation, nondisclosure, and intentional infliction of emotional distress." Id. The trial court dismissed the action on the ground that it was barred by Ohio Revised Code §§ 2305.29, "the statute that abolished amatory actions." 38 Ohio St.3d at 208, 527 N.E.2d at 1237. The Ohio Supreme Court agreed with the trial court.
The court regarded as "[c]entral to [Strock's] claims . . . [the allegation] that his marriage to his former wife . . . was harmed," and "the anguish, shock, nervousness, and depression associated therewith." 38 Ohio St.3d at 215,527 N.E.2d at 1242. The court said: "These are the very allegations that the General Assembly intended to preclude from judicial consideration and review when it [abolished the amatory torts]." Id. Significantly, the court at first rejected the validity of the clergy-malpractice claim, on the ground that malpractice is not an "intentional tort."38 Ohio St.3d at 211-12, 527 N.E.2d at 1239. Because "the alleged acts of Pressnell fell within the realm ofintentional tort law, i.e., amatory actions," the court concluded, "the tort of clergy malpractice [could] not be applied to the facts found in [that] case."38 Ohio St.3d at 212, 527 N.E.2d at 1239-40 (emphasis added).
The conclusion in Strock that a husband's allegations of consensual sexual misconduct between his wife and a pastor arising out of the counselor-counselee relationship do not sound in negligence is *Page 252 
consistent with D.D., supra. This is so, because, of course, the "gist of a malpractice action is negligence,"Baylor v. Jacobson, 170 Mont. 234, 239, 552 P.2d 55,58 (1976); Harris v. Grizzle, 625 P.2d 747, 749
(Wyo. 1981); and Hayward v. Valley Vista Care Corp.,136 Idaho 342, 350, 33 P.3d 816, 824 (2001), whereas theintentional or purposeful "interference with the marriage relationship" is the "[t]he gist of an alienation of affections action." D.D., 600 So.2d at 222. See alsoGibson v. Frowein, 400 S.W.2d 418, 421 (Mo. 1966); andAmerican Mfrs. Mut. Ins. Co. v. Morgan,147 N.C.App. 438, 443-44, 556 S.E.2d 25, 29 (2001) ("when a defendant engages in conduct that is sufficient to constitute alienation of affection or criminal conversation tort actions, intent to injure the marriage and the non-consenting spouse may be inferred, as a matter of law"). Thus, it is immaterial whether Faulkner purports to allege negligent ministerial
counseling, i.e., clergy malpractice, as Bailey insists, or negligent marital counseling, as Faulkner characterizes his claim. Neither theory is valid under the facts of this case.
This is so, because, despite the allegation in the complaint that Bailey "negligently [and/or wantonly]" counseled "[Faulkner] and his wife . . . concerning their marriage," Faulkner's actual theory of the case is that Bailey's illicit relationship with Paris destroyed his marriage. All the damages Faulkner seeks flow, not from alleged negligence or wantonness, but from Bailey's intentional conduct.
In that connection, Faulkner admitted at trial that "all [his alleged] damage . . . stem[med] from the divorce." (Emphasis added.) He testified that after he discovered the illicit relationship between Bailey and Paris, he regarded his marriage as "irretrievably broken down," and he initiated the divorce action, because "[t]here was no way [he] could get over the lies." Furthermore, he testified:
 "There is no way I could get over the . . . manipulation of the very fact of opening up to Floyd Bailey, our marriage counselor and preacher and friend and at the same time was having an affair with my wife. And just as bad for me to know that she knew what he was trying to do, to snake himself into our family and restructure our family to suit his own pleasure. With that kind of knowledge, no sir. There is no hope.
 ". . . .
 "Everything I believe he did was to manipulate
and to force us further apart. I think that's obvious."
(Emphasis added.) Furthermore, Faulkner's counsel argued to the jury:
 "This case is about manipulating this man's family and his choices, having him open up to this man as a counselor, telling him all [his] secrets, and he is having an affair with his wife and using those secrets to give him advice that's hurting him.
 ". . . .
 "Can you imagine more mental anguish than in this case? This is the ultimate breach of trust, when you have not only your preacher, a fellow who is supposed to be your friend, who has come to you and said he is a marital counselor, he is going to provide you marital counseling and going to save your marriage, when he is using it against you."
(Emphasis added.)
Faulkner also contends that he suffered mental anguish during the counseling sessions because Bailey always sided with Paris and because he was ashamed that he was suspicious of the relationship between Bailey and Paris. However, he concedes *Page 253 
that Bailey's support for Paris during the sessions was based on a bias resulting from their relationship. According to Faulkner, Bailey gave him advice that was calculated
to make Paris angry, because, he states, "Bailey knew what buttons to push to aggravate the situation." Faulkner's brief, at 12. Such allegations evidence deliberate — not negligent — conduct.
Finally, Faulkner contends that Bailey negligently
or wantonly advised him not to accept employment in Baldwin County, resulting in lost income in the amount of $52,000. At other times, however, Faulkner has portrayed this "advice" as intentional conduct motivated by the affair. For example, Faulkner's counsel argued to the jury: "At the time that [Bailey] begged [Faulkner] not to [take the job in Baldwin County], he is having an affair with his wife and he just wants the wife to stick around."
In short, this case is not about negligence or wantonness — it is about intentional conduct. The only claims stated by the allegations in this case assert the amatory torts abolished by §§ 6-5-331. Damages sought here are the species of damages recoverable for those torts.
Faulkner places great reliance on the fact that he has been careful to stylehis claims throughout this litigation as negligence and wantonness claims, rather than as an alienation-of-affections claim.[2] However, "[t]his Court has always looked to substance over form." Southern SashSales Supply Co. v. Wiley, 631 So.2d 968, 971
(Ala. 1994). "The substance of the allegation, and not its form, determines the character of a complaint."Holland v. Fidelity Deposit Co. of Maryland,225 Ala. 669, 670, 145 So. 131, 132 (1932) (emphasis added).
"One cannot sue to recover for injuries arising . . . from an interference with the marriage by simply casting the defendant's conduct as a breach of contract, or negligence, or some other intentional tort. It is that kind of sham that the case law prevents." Gasper v. Lighthouse, Inc.,73 Md.App. at 372, 533 A.2d at 1360; see also D.D., supra.
 III. Conclusion
The complaint alleges that Faulkner "was damaged by thefailure of his marriage and . . . has suffered extreme mental anguish as a result thereof." That averment is consistent with all the allegations in this case. Thus, the claims stated by these allegations are barred by §§ 6-5-331. The trial court erred in denying Bailey's motions for a JML. The judgment is, therefore, reversed, and the cause is remanded for the entry of a judgment in favor of Bailey.
[1] During the litigation, Bailey moved for a summary judgment, arguing, among other things, that Faulkner's claims were an improperly recast claim of alienation of affections. The trial court denied that motion, but, in doing so, certified to this Court, pursuant to Ala. R.App. P. 5, the following question for appeal of an interlocutory order: "Whether the allegations in the plaintiff's complaint constitute a claim [of] alienation of affections, and if so, whether plaintiff's claims are barred by Ala. Code §§ 6-5-331 (1975)." On July 22, 2003, this Court denied Bailey's petition for permission to appeal the denial of the summary judgment.
[2] Faulkner also argues that he has not expressly sought damages for "loss of consortium." Implicit in this argument is that there could be no alienation-of-affections action in the absence of an express claim of loss of consortium. However, loss of consortium is only one element of damages recoverable under a traditional amatory-tort claim. Also recoverable were punitive damages and damages for humiliation, mental anguish, and pecuniary loss, which Faulkner did seek.
REVERSED AND REMANDED.
HARWOOD, SMITH, and BOLIN, JJ., concur.
NABERS, C.J., and SEE, LYONS, and STUART, JJ., concur specially.
PARKER, J., concurs specially (opinion issued on January 20, 2006).